WILLIAM T. YORK AND DARL HAVENS *v.* STATE OF INDIANA

[No. 2-1277A475. Filed September 26, 1978.]

*Harriette Bailey Conn,* [*Mrs.*], Public Defender of Indiana, *David P. Freund, Bobby Jay Small, Robert W. Hammerle,* Deputy Public Defenders, for appellants.

*Theodore L. Sendak*, Attorney General of Indiana, *Robert J. Black*, Deputy Attorney General, for appellee.

YOUNG, J.—Defendants William T. York (York) and Darl Havens (Havens) were convicted of first degree burglary[1] and of entering to commit a felony,[2] respectively. They bring this appeal, challenging certain alleged irregularities in the trial court proceedings, the admission of an exhibit into evidence, the consistency of the verdicts, and the sufficiency of the evidence to support Havens' conviction. Finding no reversible error, we affirm.

The evidence favorable to the verdicts reveals the following. Early in the morning of April 23, 1974, a couple, the Caudills, residing in Fowlerton, a Grant County town, awoke to prepare for work. They noticed that a green van was repeatedly circling through their neighborhood. Such behavior aroused their suspicion. They scrutinized the van from the front window of their house, a distance of about twenty-five feet, and recognized the van as belonging to a local motorcycle gang known as the Outlaws.

This identification fortified the couple's suspicions. They pretended to leave for work as normal. After driving a short distance they circled back to their residence and discovered that the van was parked in front of their house. They then drove to the home of the town marshall and returned with him to the scene. The marshall in company with the wife approached the residence. A window in the front door had been broken. The interior of the house was ransacked. Some of the appliances had been disconnected and moved about. A window in the rear of the house, which had been nailed shut, was now open. The wife glanced through the window and observed a shadowy form fleeing the house. She later identified this person as defendant Havens and as fitting the description of the person who had earlier been seated on the passenger side of the van. The marshall withdrew from the residence to call for assistance over his radio. While seated in his car, he saw York run from

---

1. IC 35-13-4-4 (now repealed).

2. IC 35-13-4-5 (now repealed).

the residence to the van. The marshall intercepted York before he could drive away.

Immediately after these initial events more law enforcement personnel converged on the scene. They dispersed through the neighborhood and the surrounding area in order to search for the fleeing figure whom Mrs. Caudill had spotted from the window. Approximately forty minutes later and at a distance of one and eight-tenths miles from the Caudill residence, these law officers spotted a solitary figure walking along a country road. This individual was Havens. The testimony of one of the officers discloses that no person other than Havens was observed on foot at that early hour of the morning. The officers returned with Havens to the Caudill residence. The Caudills identified him as being one of the occupants of the van.

We turn now to the issues before us and first consider certain alleged errors which occurred during the course of the trial.

On redirect examination Mrs. Caudill was questioned about the "Outlaws." Specifically, she was asked, "Do you know what Outlaws do?" She responded, "Yes, and I am afraid up here right this morning when I am testifying." Defense counsel objected and moved for a mistrial, claiming prejudice and claiming that the remark had an inflammatory effect on the jury. The trial judge overruled the motion.

The unresponsive answer by the witness is not ground for reversal unless the answer placed the defendants in grave peril. *Johnson v. State* (1977), 265 Ind. 689, 359 N.E.2d 525, 529; *Lewis v. State* (1976), 264 Ind. 288, 342 N.E.2d 859, 863-64; *Whitten v. State* (1975), 263 Ind. 407, 333 N.E.2d 86, 90; *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312, 320. Whether or not grave peril exists depends on all the circumstances of the case. The decision of the trial court will not be disturbed except for clear error. *Johnson v. State, supra.*

In the case at hand we have carefully reviewed the proceedings at trial and we conclude that the trial court did not err by refusing to grant a mistrial. The remark by Mrs. Caudill, while unfortunate, was not so prejudicial as to place the defendants in "grave peril." The remark was an isolated and unexpected response of a layperson. There is no indication in the record that the prosecutor deliberately sought to elicit the

response. After being warned by the judge to limit her answers to the questions, the examination continued without further interjections by Mrs. Caudill. Under these circumstances we are inclined to defer to the discretion of the trial judge. Accordingly, we hold that he did not err by refusing to grant a mistrial.

The second error raised by defendants concerns a conversation which allegedly took place in the office of the county clerk, located in the courthouse. This conversation apparently occurred shortly before the trial convened. A local attorney, who was present in the clerk's office, testified[3] that two jurors were also present and were drinking coffee. According to the attorney, one of the jurors observed that every attorney in town must be present in the clerk's office. The attorney also recalled that some unspecified person stated that York and Havens were being tried again. The attorney, however, could not say for certain whether the two jurors were present when the latter comment was made.

The defendants claim that this interchange in the clerk's office entitled them to a mistrial. The gist of their contention is that the two jurors were indirectly informed that York and Havens had prior criminal records. In response to this contention the trial judge observed that the defendants' counsel, himself, had indicated to the jury that the defendants had criminal records. Thus, stated the judge, the two jurors (if indeed they were even present in the clerk's office) were informed of nothing more than what the defendants' counsel himself later revealed to the jury. This statement of the trial judge passed unchallenged by the defendants' attorney.[4]

---

3. At the close of the evidence, and before the case was submitted to the jury, the trial court held a hearing at which the court and the defendants' counsel examined a local attorney. His testimony serves as the basis for defendants' second and third assignments of error.

4. We have searched the record but have failed to locate the disclosure mentioned by the trial judge. Nonetheless, we will accept the observation of the judge as accurate for the following reasons. First, the judge's statement was not contradicted by defendants' counsel. This lack of contradiction is significant because had the judge been in error, the normal reaction to be expected from counsel would be a prompt protest. Second, defendants' brief to this Court fails to contradict the judge's observation. Finally, the disclosure to the jury may have taken place but not have been recorded. Under these circumstances we may assume that the trial judge ruled correctly. *See Smith v. State*

Furthermore, we believe that the defendants are not entitled to reversal for this second assigned error unless they can show prejudice, or can establish facts upon which prejudice may be presumed. We reach this conclusion by borrowing from the reasoning of the following case law precedent dealing with the related question of alleged juror misconduct. *See Oldham v. State* (1967), 249 Ind. 301, 231 N.E.2d 791, 793; *Myers v. State* (1960), 240 Ind. 641, 168 N.E.2d 220, 223; *Barker v. State* (1958), 238 Ind. 271, 150 N.E.2d 680, 683; *Trombley v. State* (1906), 167 Ind. 231, 78 N.E. 976, 977. Given the circumstances of this case, we fail to find any prejudice, nor do we believe that prejudice may be presumed. The fact that it is questionable whether the two jurors were even in the clerk's office all the more fortifies our conclusion that the defendants suffered no prejudice. For these reasons the judge did not err by refusing to grant a mistrial.

The third error raised by the defendants is an alleged violation of the public trial provision of Art. I, Sec. 13 of the Indiana Constitution, and of the Sixth Amendment to the United States Constitution.[5] The defendants claim this error arose when two local attorneys, who chanced to stop by the courtroom during voir dire,[6] were denied admittance. This exclusion apparently resulted from a misunderstanding between the trial judge and the sheriff's department. The judge had ordered that spectators be searched. The department, however, was under the im-

---

(1977), 267 Ind. 167, 368 N.E.2d 1154, 1158. "One of the skills of trained lawyers is the ability to assure that his objections and motions are so articulated and presented that the record will reflect the precise issue and the surrounding circumstances with clarity, so that on appeal, we may understand the issue in context. There being no showing to the contrary, we assume that the trial judge ruled properly. . . ." 368 N.E.2d at 1158.

5. It is at least questionable whether the "public trial" provisions of the Sixth Amendment apply to the states. Justice Hunter answered this issue in the negative in *Marshall v. State* (1970), 254 Ind. 156, 258 N.E.2d 628; *cf. Hackett v. State* (1977), 266 Ind. 103, 360 N.E.2d 1000, 1004. An affirmative answer is found in such cases as *United States ex rel. Lloyd v. Vincent* (1975), 2d Cir., 520 F.2d 1272, 1273-74; *United States ex rel. Bennett v. Rundle* (1969), 3d Cir., 419 F.2d 599, 603. For purposes of this opinion we need not consider this issue because even assuming the applicability of the Sixth Amendment, we fail to find any violation thereof. See text, *infra*.

6. It has been stated that the "public trial" provision applies to voir dire. *United States v. Sorrentino* (1949), 3d Cir., 175 F.2d 721, 722.

pression that spectators (or at least the two attorneys) were to be excluded.[7]

Assuming that this incident did in fact take place, we believe that it did not rise to the level of a constitutional violation. In support of this conclusion we borrow from the language of *Snyder v. Coiner* (1975), 4th Cir., 510 F.2d 224, wherein the Court stated:

> "The other contention is that the defendant was denied a public trial, since, for a time during arguments of counsel before the jury, a bailiff refused to allow persons to enter or leave the courtroom. Such condition existed for but a short time and was quickly changed by the Court, when advised of the action of the bailiff. The bailiff, in acting as he did, merely sought to prevent any disturbance during the arguments. There were no restrictions placed on the defendant, his counsel, family or witnesses or even spectators then in the courtroom. The incident was entirely too trivial to amount to a constitutional deprivation."

510 F.2d at 230.

In reaching the conclusion that the defendants' constitutional rights were not violated in this instance, we do not mean to imply that a trial court is always at liberty to exclude members of the public. Rather, we limit our conclusion to the facts of this particular case where the exclusion was inadvertent and where there is no indication in the record that anyone other than these two attorneys were excluded from the proceedings.

The fourth error raised by defendants concerns the admission of Exhibit H by the prosecution. This exhibit was a certified copy of a certificate of registration of the Bureau of Motor Vehicles. The apparent purpose of the exhibit was to show that at the time of the break-in, the van was bearing a license plate which had been issued to a different vehicle. The defendants claimed the exhibit was immaterial.[8]

---

7. The record does not show that anyone other than the two attorneys were excluded, nor is there a clear indication in the record as to how long the misunderstanding persisted.

8. At trial the defendants also objected to the technical form of the exhibit. That objection is not pursued on appeal and is therefore waived. Indiana Rules of Court, Appellate Rule 8.3(A).

Contrary to the defendants' contention, the exhibit was material. Generally speaking, evidence which tends to show that the defendants undertook preparation for the crime is admissible. 22A C.J.S. *Criminal Law*, Sec. 606 (1961). Specifically, it has squarely been held that evidence revealing that a criminal defendant employed a substitute license plate is admissible as bearing upon such defendant's guilty motive and his intent to evade detection and capture. *People v. Sturman* (1942), 56 Cal.App.2d 173, 132 P.2d 504, 509. We concur with the reasoning employed in *People v. Sturman* and we likewise conclude that the evidence was properly admitted.

The next issue raised by defendants is their contention that the verdicts are fatally inconsistent. Defendants York and Havens were both charged with first degree burglary. York was found guilty of this offense, but Havens was convicted of a lesser-included offense, entering to commit a felony. Defendants' argument proceeds as follows. The jury was confronted with a "single body of evidence." This evidence, they claim, "pointed equally to the guilt or innocence of both." From propositions such as these, they then vault to the conclusion that the verdicts are inconsistent because "there is in fact no valid factual distinction between the evidence against Havens or York."

Regardless of the merits of defendants' argument, we find that they have waived this issue. The record does not show that they made any objection to the verdicts. Had an objection been made and sustained, the jury could have retired again with instructions to correct the alleged improper verdict. Consequently, the failure of the defendants to object at trial constitutes waiver of the alleged inconsistency in the verdicts. "If the appellant felt the verdict of the jury was not in proper form, he may not stand idly by and make no objections thereto and permit the jury to be discharged, and then, after the jury has separated finally and it is too late to correct or amend the verdict, attack the verdict as defective." *Smith v. State* (1965), 247 Ind. 126, 211 N.E.2d 186, 189; *see also Myles v. State* (1955), 234 Ind. 129, 124 N.E.2d 205, 207; *Limeberry v. State* (1945), 223 Ind. 622, 63 N.E.2d 697, 698 ("A failure to object to a defective verdict when it is returned and before the jury is discharged waives the right to move for a venire de novo."); *City of Fort Wayne v. Duryee* (1894), 9 Ind.App. 620, 37 N.E. 299, 300-01; *Pehlman v. State* (1888), 115 Ind. 131, 17 N.E. 270, 271; 23A C.J.S.

*Criminal Law*, Sec. 1416 (1961); 4 C.J.S. *Appeal & Error*, Sec. 309, p. 988 (1957).

Moreover, the defendants compounded their omission by failing to raise this alleged error in the motion to correct errors. This again amounts to waiver. *Brandon v. State* (1978), 268 Ind. 150, 374 N.E.2d 504, 506; *Murphy v. State* (1977), 267 Ind. 184, 369 N.E.2d 411, 413; *Diggs v. State* (1977), 266 Ind. 547, 364 N.E.2d 1176, 1178; *Fair v. State* (1977), 266 Ind. 380, 364 N.E.2d 1007, 1014.

Apparently aware of their failure to preserve this error, the defendants nonetheless assert that Trial Rule 50(A)(5) and *Collins v. State* (1977), 266 Ind. 430, 364 N.E.2d 750, 754, permit them to challenge the verdicts for the first time on appeal. We disagree. *Collins v. State* and *Whitfield v. State* (1977), 266 Ind. 629, 366 N.E.2d 173, do indeed permit a criminal defendant to challenge the sufficiency of evidence for the first time on appeal. However, it hopefully will not require any argument to establish that an alleged inconsistency in the verdicts is not the same as an alleged insufficiency in the evidence. Defendants have supplied us with no persuasive reasoning nor authority to convince us otherwise. Consequently, we will not permit the defendants to hitch their argument to Trial Rule 50(A)(5).[9]

The final issue pressed upon us is that the evidence is insufficient to support the convictions of Havens. The defendants' brief contains an explicit concession that the evidence is sufficient to support the

---

9. Even were we to reach the merits, we would hold against the defendants. The modern rule is that where two defendants are each charged with the same offense, the jury may properly convict one defendant of the charged offense and the second defendant of a lesser-included offense. 4 *Wharton's Criminal Procedure*, Sec. 576 (12th ed. 1976); Annot., "Inconsistency of Criminal Verdicts as Between Two or More Defendants Tried Together," 22 A.L.R.3d 717 (1968); 76 Am.Jur.2d *Trial*, Sec. 1161 (1975); 23A C.J.S. *Criminal Law*, Sec. 1402 (1978 Supp., p. 212); *State v. Mower* (1974), Me., 317 A.2d 807; *State v. Devoe* (1973), Me., 301 A.2d 541; *State v. Jordan* (1969), 105 Ariz. 250, 462 P.2d 799; *People v. Segura* (1969), 276 Cal.App.2d 589, 80 Cal.Rptr. 794. In opposition to this current authority the defendants have cited *Davis v. State* (1898), 75 Miss. 637, 23 So. 770; *American Socialist Soc. v. United States* (1920), 2d Cir., 266 Fed. 212; *People v. Massett* (1889), 55 Hun. 606, 7 N.Y. Crim. 393, 7 N.Y.S. 839; *State v. Gager* (1962), 45 Haw. 478, 370 P.2d 739; and *People v. Munroe* (1908), 190 N.Y. 435, 83 N.E. 476, all of which authority is questionable either for not being on point or for having been decided under an old belief that verdicts should be "consistent." *See* Annot., "Necessity of Consistency in Verdict in Criminal Case," 80 A.L.R. 171 (1932). Additionally, we discover that *Davis v. State* has been overruled. *See Newell v. State* (1975), Miss., 308 So.2d 68.

conviction.[10] We deem this to be a waiver of the issue and it need not be considered further by us. *McKee v. Hasler* (1951), 229 Ind. 437, 98 N.E.2d 657.

In any event, Havens was identified by Mr. & Mrs. Caudill as the passenger in the van which had circled through the neighborhood. Very shortly thereafter the van was found parked in front of the Caudill residence. The house itself was in a state of recent disarray. Upon entering the house Mrs. Caudill observed a man flee from the rear of her residence. She testified that this man was Havens. We also note that law enforcement personnel quickly converged on the scene. Upon being informed of the flight by one of the intruders the officers fanned out through the neighborhood and the surrounding rural area. From their testimony it is apparent that Havens was the only individual they found at large at that early hour of the morning. Havens was immediately returned to the scene where he was identified by the Caudills. Upon this review of the facts we are assured that there was sufficient evidence to support the conviction of Havens.

Finding no reversible error, the convictions are affirmed.

Lybrook, P.J., concurs (sitting by designation).

Lowdermilk, J., concurs (sitting by designation).

NOTE—Reported at 380 N.E.2d 1255.

---

10. Appellants' brief at p. 26 ("Defendants concede that the evidence introduced at trial and the reasonable inferences to be drawn therefrom would be sufficient to support the verdicts if they were analyzed independently.").