**Herbert N. KENDRICK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9504–CR–125.

Court of Appeals of Indiana.

Feb. 27, 1996.

James F. Stanton, Crown Point, for appellant.

Pamela Carter, Attorney General, Janet L. Parsanko, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

STATON, Judge.

A jury found Herbert N. Kendrick ("Kendrick") guilty of three counts of dealing in cocaine, a class B felony.[1] Kendrick presents two issues for our review, one of which is dispositive: Whether the trial court violated Kendrick's right to a public trial.

We remand.

The facts most favorable to the State indicate that Kendrick was charged with three counts of dealing in cocaine after he made several sales to an informant, James Wilson ("Wilson"). Prior to the trial, the State filed a motion asking that the courtroom be closed to the public during Wilson's testimony due to Wilson's fear for his life. Wilson feared that after he testified, people in the courtroom would be able to identify him, thus making him an easier target for revenge. Prior to Wilson's testimony, the judge excluded several people from the courtroom.

Kendrick argues that this exclusion violates his right to a public trial under the Sixth Amendment to the United States Con-

---

1. IND.CODE § 35–48–4–1 (Supp.1992).

stitution[2] and Article I, Section 13 of the Indiana Constitution.[3] The Sixth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment.[4]

Public trials play an important role in our judicial system. Public proceedings help to ensure that a defendant is treated fairly. *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). In addition, the presence of the public causes those participating in the proceeding to be "keenly alive to a sense of their responsibility and to the importance of their functions." *Id.* (citation omitted). "[A] public trial encourages witnesses to come forward and discourages perjury." *Id.*

■■■ However, the right to a public trial is not an unlimited right. *Hackett v. State,* 266 Ind. 103, 360 N.E.2d 1000, 1004 (1977). It can be limited by other interests of justice "such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller, supra,* at 45, 104 S.Ct. at 2215. Situations where other interests override the presumption of openness of the courts will be rare and a careful balancing of the interests at issue must occur. *Id.* The United States Supreme Court has set forth a four-part analysis for courts to use in determining whether to close proceedings to the public.

[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.

*Waller, supra,* at 48, 104 S.Ct. at 2216–17; *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 509–10, 104 S.Ct. 819, 823–24, 78 L.Ed.2d 629 (1984).

■■■ In order to obtain a reversal for a violation of the right to a public trial, a defendant does not need to show specific prejudice. It is difficult, if not impossible, for a defendant to show specific prejudice resulting from closure of a courtroom. *Waller, supra,* at 49 n. 9, 104 S.Ct. at 2217 n. 9. Because the loss to both the defendant and society from improperly closing courtrooms is intangible, the prejudice of the non-public proceedings is implied. *Id.*

The State alleged that its informant feared for his life. The confidentiality of an undercover police officer's identity has been held to be a valid interest when considering whether to close a courtroom. *U.S. ex rel Lloyd v. Vincent,* 520 F.2d 1272, 1274–75 (2nd Cir.1975), *cert. denied,* 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975). However, in ruling on the motion, the trial judge simply stated that he "had read the law." He did not make specific findings concerning the interests at issue, showing that the closure was as narrow as possible or showing that he had considered any alternatives to closing the courtroom. Without the specific findings mandated by *Waller* and *Press–Enterprise,* we are unable to determine whether Kendrick's right to a public trial was violated. Therefore, we remand this case to the trial court with instructions to enter specific findings in support of its order to close the

---

**2.** The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..."

**3.** Art. I, § 13 states "[i]n all criminal prosecutions, the accused shall have the right to a public trial ..."

**4.** Prior Indiana case law questioned whether the Sixth Amendment is applicable to the states through incorporation by the Fourteenth Amend-

ment. *Marshall v. State,* 254 Ind. 156, 258 N.E.2d 628, 629 (1970), *reh. denied,* 261 N.E.2d 566; *York v. State,* 177 Ind.App. 568, 380 N.E.2d 1255, 1258 n. 5 (1978). However, the United States Supreme Court has applied the Sixth Amendment to state proceedings in several cases. *See, Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

courtroom.[5]

Kendrick also contends that he was denied the effective assistance of counsel by counsel's failure to object to closure of the courtroom. However, without the specific findings required when a court orders the courtroom closed during a portion of the trial, it cannot be determined whether the closure was proper and whether an objection would have been sustained.

Remanded.

DARDEN, J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. Here, only two spectators were excluded from the court during the testimony of a single witness. The circumstances in the present case are different than those presented in the authority upon which the majority relies.

In *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the court determined that the right to a public trial included a suppression hearing held after the jury was empaneled. *Id.* at 48, 104 S.Ct. at 2216–2217. · The court found that less extensive measures were available to protect the privacy of people mentioned in wire-tap tapes than ʼto close a seven-day hearing due to tapes which spanned two and one-half hours. *Id.* at 48–49, 104 S.Ct. at 2216–2217.

In *Press–Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), the court found that the California court improperly closed six weeks of *voir dire* to the public, including the press.

*Id.* at 512–513, 104 S.Ct. at 825–826. The court held that the closure, in an attempt to increase candor in the responses by individual jurors in a trial whère the defendant was charged with the rape and murder of a teenage girl, was not narrowly tailored to protect privacy while maintaining the openness essential to public confidence in the criminal justice system. *Id.*

At the core of both cases was the overbreadth of the response to a legitimate privacy interest, that of uncharged individuals mentioned on wire-tap tapes in *Waller* and that of potential jurors who may be required to reveal personal matters due to the nature of the criminal trial at which they were called upon to serve in *Press–Enterprise.* In both cases, the trial court closed the matters to the public.

Here, the stated interest was for the protection of a witness, a matter addressed by IND.CODE § 5–14–2–7 (1993 Ed.) (court has inherent power to "exclude those individuals whose presence constitutes a direct threat to the safety of . . . witnesses"). Based upon its inherent power, the trial court excluded only two spectators who posed a threat to the safety of a witness. Under these circumstances, I would find that the trial court acted pursuant to the statute, and that any threat to the fairness of an open trial was not implicated by the removal of two people during the testimony of one witness, thus rendering the specific findings mandate of *Waller* and *Press–Enterprise* inapplicable.

---

5.   Kendrick also argues that the closure was error because, although the trial court scheduled a hearing on the matter, no hearing was held. Ind.Code §§ 5–14–2–3 and 5–14–2–4 (1988) provide that prior to closing the courtroom, the court must hold a hearing at which time the parties and the general public are afforded an opportunity to be heard on the matter. However, the statute specifically states that this:

does not affect the inherent power of a court to make limited exclusions of witnesses, to relieve

overcrowding, to protect the order and decorum of the courtroom, or to exclude those individuals whose presence constitutes a direct threat to the safety of the spectators, parties, or witnesses.

Ind.Code § 5–14–2–7 (1988). Therefore, the statute does not mandate a hearing when the closure is for witness safety as alleged in the present case.