B.D. PARKER, JR., Circuit Judge,
dissenting:
This case involves the undisclosed exclusion of the public by the trial judge from the entire voir dire in a criminal trial in a federal court. The closure was not requested by anyone and the government readily concedes that the courtroom should not have been closed. Neither defense counsel nor government counsel was advised that the closure had occurred. The closure did not come to light until nearly two years after the trial, and the circumstances surrounding the closure did not come to light until this Court remanded to the district court for fact finding.
The excuses generated from the district court for the closure — insufficient courtroom capacity and the need to protect veniremen from contact with the public— do not withstand even the most casual scrutiny. Adding insult to serious constitutional injury, the majority air brushes all of this as “trivial,” reasoning that nothing of significance happened during voir dire and that the veniremen were adequate proxies for the excluded public. This reasoning, which is inconsistent with Supreme Court law and which would be difficult to take seriously were not the stakes so large, insults the values inherent in the Sixth Amendment. Although other courts have recognized narrow de minimis exceptions to the Sixth Amendment’s public trial right, no other court has come close to blessing an undisclosed, complete, unrequested, and intentional closure of an entire voir dire. Because the majority’s approach is misguided and dangerous, I respectfully dissent.
The facts are undisputed. Jury selection took place on March 24, 2008, beginning at 9:45 a.m. Before the proceedings commenced, the district judge, unbeknownst to counsel, directed her deputy to tell anyone who was not a prospective juror to leave the courtroom for the duration of voir dire. Gupta’s brother and girlfriend and any other spectators present were required to leave. Long after the fact, when the closure came to light, the district court, at our direction, offered two purported justifications for excluding the *873 public from voir dire: “to accommodate the large number of jurors in the venire panel” and “to protect the panel from hearing anything about the case from any member of the public.” The government concedes that neither rationale justified the closure. Majority Op. at 866.
With the courtroom closed, the judge, the prosecutors, and defense counsel set about picking a jury. Around midday, the court broke for lunch. Voir dire resumed at 2:15 p.m., and concluded in the late afternoon, when the clerk read the names of the fourteen men and women who had been selected. When Gupta’s brother and girlfriend were permitted to reenter the courtroom, the jury had already been seated for opening statements. After a trial that lasted about a week, Gupta was convicted of preparing and filing fraudulent immigration documents, and sentenced to fifty-one months in prison.
The Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the right to a ... public trial.” U.S. Const, amend. VI. Last year, in Presley v. Georgia, the Supreme Court confirmed that the Sixth Amendment right to a public trial extends to the voir dire of prospective jurors. — U.S. -, 130 S.Ct. 721, 724, 175 L.Ed.2d 675 (2010); accord Gibbons v. Savage, 555 F.3d 112, 115 (2d Cir.2009) (recognizing that Sixth Amendment guarantees defendant’s “right to an open, public trial, including during the jury selection”). Presley built upon the Supreme Court’s earlier decision in Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), which held that voir dire must be open to the public under the First Amendment. In Press-Enterprise, the Supreme Court found, based on its “review of the historical evidence,” that jury selections have always been open to the public, for systemically essential reasons: “since the development of trial by jury, the process of selection of jurors has presumptively been a public process”; “[t]his open process gave assurance to those not attending trials that others were able to observe the proceedings and enhanced public confidence.” 464 U.S. at 505-07, 104 S.Ct. 819 (“The process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system.”).
It is well established that the violation of the right to a public trial is a “structural” error, Waller v. Georgia, 467 U.S. 39, 50 n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), because it “affect[s] the ‘framework within which the trial proceeds,’ ” United States v. Marcus, — U.S.-, 130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012 (2010) (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). Therefore, a violation of the public trial right is not subject to “harmless error” review. Gibbons, 555 F.3d at 119 (“[T]he violation of a defendant’s right to a public trial is not justified by a finding that the error was harmless.”). Instead, a structural error renders a criminal trial fundamentally unfair and “requires automatic reversal.” Washington v. Recuenco, 548 U.S. 212, 218-19, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).
However, this Court recognizes a “triviality” exception to the public trial right, pursuant to which not “every temporary instance of unjustified exclusion of the public — no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure — [will] require that a conviction be overturned.” Gibbons, 555 F.3d at 120. Before today, the exception was available only in limited circumstances. See, e.g., id. at 114, 121 (courtroom was closed for the first afternoon of a voir dire that spanned several days); Carson v. *874 Fischer, 421 F.3d 83, 92-93 (2d Cir.2005) (defendant’s ex-mother-in-law was excluded during the testimony of one witness, while other members of defendant’s family were allowed to attend); Bowden v. Keane, 237 F.3d 125, 129-30 (2d Cir.2001) (courtroom was closed only during the testimony of an undercover officer, and a transcript of his testimony was made available to the public).
As these cases make clear, the exception applies only rarely and to truly trivial closings. Gibbons provided several examples of what this narrow exemption was intended to cover: proceedings lasting a few minutes after a lunch recess in the absence of a defense lawyer but where no evidence of consequence to his client was adduced; an ill-advised closure that lasted a couple of minutes during which nothing of consequence occurred and the court, quickly realizing its mistake, lifted the closure; or where the closure occurred during an important part of the proceedings but was inadvertent and the consequence of “an administrative malfunction.” 555 F.3d at 120-21. In Gibbons itself, the case on which the majority relies, the trial judge closed the courtroom, on the record, for only the first afternoon of a jury selection that went on for several days. 555 F.3d at 114-15. Here, by contrast, the closure lasted for the entirety of jury selection, and was undisclosed.
For a number of reasons, the triviality exception simply was never meant to apply, and should not now be applied, to such a closure. A trial judge’s undisclosed exclusion of the public from jury selection, without the knowledge or assent of the accused or the lawyers, seriously undermines the basic fairness of a criminal trial and the appearance of fairness so essential to public confidence in the system. Sixth Amendment jurisprudence teaches that the selection of jurors has presumptively been open since the birth of the jury trial, giving assurance to those not in attendance that their fellow citizens are able to observe the proceedings and thereby enhancing public confidence in the criminal justice system. Press-Enter., 464 U.S. at 508, 104 S.Ct. 819 (“The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known.”). Transparency and confidence go hand in hand: citizens in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing. See Richmond Newspapers v. Virginia^ 448 U.S. 555, 572, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).
It is instructive to consider the circumstances in which courts have, to date, deemed voir dire closures to be merely trivial, or de minimis. I have located eighteen cases in which a federal or state court has found that a closure during voir dire, though improper, was too trivial (or de minimis) to warrant overturning a conviction. As one would expect, in all of those cases, the closure lasted only for part of voir dire and/or was limited to certain spectators, and in many instances the closure was inadvertent.[7] Never, until today, *875 has any court held that a judge’s intentional, unjustified, and undisclosed exclusion of the public for the entirety of voir dire can be brushed aside as a merely “trivial” affront to the Sixth Amendment.
As a purported justification for the closure the majority first asserts that the closure was brief and “nothing of significanee happened” during that time. Majority Op. at 868-69. They are correct that the closure lasted for only several hours, but what happened during that time was the entire process of selecting a jury. From the judge’s introductory remarks through the empaneling of the jurors, the courtroom was closed to Gupta’s family *876 and to the public. Every day, in courts across this Circuit, juries are chosen in unremarkable proceedings that last but a few hours. The majority’s holding suggests that all such proceedings are inconsequential and can permissibly be closed to the public. Even more disturbing, the logic has no apparent end. Many cross-examinations, arguments to the court, statements to jurors, and instructions to defendants and to counsel are not especially long. Now, apparently, the summary exclusion of the public from such proceedings can be excused so long as what occurred behind closed doors was brief and “nothing of significance happened.” And the majority’s approach is completely unable to accommodate the facts that the closing at issue was both advertent and undisclosed.
The majority also asserts that the closure was justified because the public was present in the courtroom for voir dire — in the form of the potential jurors. Id. at 868-71. This reason makes no sense to me. The long-established tradition of open voir dire contemplates ensuring that members of the general public, external to the judicial process, have the opportunity to observe the proceedings. As the Supreme Court found in Press-Enterprise, “beginning in the 16th century, jurors were selected in public,” 464 U.S. at 507, 104 S.Ct. 819 (emphasis added), meaning that the doors of the “towne house” or other “common place” were open to “so many as will or can come so neare as to heare it,” id. at 506-07, 104 S.Ct. 819 (emphasis deleted) (quoting T. Smith, De República Anglorum 96 (Alston ed.1906)). By contrast, a voir dire is neither “public” nor “open” if the only members of the public allowed to attend are those who, having received juror summonses, are required to be there and part of the judicial process itself. Indeed, if the presence of potential jurors were sufficient to “safeguard!] ]” the values underlying the Sixth Amendment, Majority Op. at 870-71, it would seem that spectators could always be excluded. Furthermore, the assertion that the presence of the venire alleviated the Sixth Amendment concerns in this particular case ignores the fact that the potential jurors sitting in the courtroom did not (of course) include Gupta’s brother and girlfriend, who had been forced to leave. Cf. Smith v. Hollins, 448 F.3d 533, 539 (2d Cir.2006) (noting our “strong devotion to the preservation of [a defendant’s] right to have family and friends present at his trial”).
This case is not, in my view, close. A criminal defendant’s right to a public trial extends to voir dire. Therefore, the intentional, unjustified, and undisclosed closure of an entire voir dire is necessarily a nontrivial structural error that violates the Sixth Amendment and requires reversal. The result in this case is so self-evidently inconsistent with Supreme Court jurisprudence that I would hope that it becomes the subject of certiorari.

. See Gibbons, 555 F.3d at 114, 121 (courtroom closed for first afternoon of jury selection that spanned several days); United States v. Izac, 239 Fed.Appx. 1, 4 (4th Cir.2007) (defendant's wife, a potential witness, was excluded on government’s motion, and "courtroom otherwise remained open to the public”); United States v. Saldana, No. 2009-32, 2010 WL 2991039, at *11, 2010 U.S. Dist. LEXIS 75019, at *30 (D.V.I. July 25, 2010) (alleged closure was inadvertent and lasted, at most, for the beginning portion of voir dire); *875 Garey v. United States, No. 5:08-CV-90024, 2010 WL 2507834, at *17-18, 2010 U.S. Dist. LEXIS 59239, at *47-48 (M.D.Ga. Mar. 29, 2010) (unbeknownst to judge, court security officer locked courtroom during voir dire, resulting in denial of entry to one newspaper reporter); Yarbrough v. Klopotoski, No. 09-0336, 2009 WL 4810553, at *12, 2009 U.S. Dist. LEXIS 121330, at *34-35 (E.D.Pa. Oct. 30, 2009) (magistrate’s report and recommendation) (closure limited to introductory portion of voir dire; courtroom was reopened for individual questioning of potential jurors), approved and adopted, 2009 WL 4673862, 2009 U.S. Dist. LEXIS 114726 (Dec. 8, 2009); Wilson v. United States, No. MIG-08-160, 2008 WL 4189601, at *3^1, 2008 U.S. Dist. LEXIS 69437, at *7-9 (D.Md. Sept. 5, 2008) (unbeknownst to judge, court personnel excluded defendant's mother and girlfriend from courtroom during voir dire); United States v. Ahern, No. 04-cv-474 — SM, 2005 WL 1074279, at *4, 6-7, 2005 U.S. Dist. LEXIS 8235, at *13, 21 (D.N.H. Apr. 29, 2005) (defendant’s mother left courtroom at the direction of defendant’s own attorney); People v. Bui, 183 Cal.App.4th 675, 107 Cal.Rptr.3d 585, 592-95 (2010) (three spectators excluded for forty minutes of multi-day voir dire); York v. State, 177 Ind.App. 568, 380 N.E.2d 1255, 1258-59 (1978) (inadvertent exclusion of two spectators resulting from misunderstanding between judge and court security officer); Kelly v. State, 195 Md.App. 403, 6 A.3d 396, 410-11 (2010) (courtroom inadvertently closed to defendant's family members for morning segment of voir dire that lasted entire day); Commonwealth v. Lang, Opinion No. 114231, 2005-10311, 2011 WL 285832, at *8, 2011 Mass.Super. LEXIS 6, at *21 (Mass.Super.Ct. Jan. 31, 2011) (defendant had “not proved any exclusion of the public beyond the limited exclusion of [his sister] and her party on one occasion before impanelment began’’); Michigan v. Pinkney, Nos. 282144, 286992, 2009 WL 2032030, at *5-6, 2009 MichApp. LEXIS 1526, at *17-19 (Mich.Ct.App. July 14, 2009) (live video streaming voir dire to spectators watching in alternate courtroom periodically cut out); State v. Venable, 411 NJ.Super. 458, 986 A.2d 743, 748-49 (App.Div.2010) (judge announced that members of defendant’s and victim's families would not be allowed in courtroom during voir dire; there was no evidence that any such family members had actually been present and excluded); State v. Johnson, Nos. A-5330-06T4, A-6330-06T4, 2010 WL 1427279, at *12, 2010 NJ.Super. Unpub. LEXIS 748, at *30-31 (NJ.Super.Ct.App.Div. Apr. 9, 2010) (closure limited to “the time it took for the voir dire process to excuse a sufficient number of prospective jurors to free up enough space in the courtroom to accommodate the five members of the public [who had been excluded]’’); State v. Dreadin, No. A-5721-06T4, 2009 WL 3430113, at *1-2, 2009 NJ.Super. Unpub. LEXIS 2602, at *3-4 (NJ.Super.Ct.App.Div. Oct. 19, 2009) (judge instructed defendant’s husband to wait outside courtroom during jury selection); State v. Irizzary, No. A-1072-05T4, 2007 WL 1574308, at *3, 2007 NJ.Super. Unpub. LEXIS 1429, at *7-8 (NJ.Super.Ct.App.Div. June 1, 2007) (closure limited to defendant’s girlfriend and lasted only thirty minutes); State v. Jackson, No. A-4764 — 03T4, 2005 WL 3429738, at *2-4, 2005 NJ.Super. Unpub. LEXIS 186, at *6-9 (NJ.Super.Ct.App.Div. Dec. 15, 2005) (defendant's nephew mistakenly excluded by court officer); State v. Lormor, 154 WashApp. 386, 224 P.3d 857, 861 (2010) (closure limited to defendant’s three-year-old daughter, whose presence judge thought would distract jurors); see also Morales v. United States, 635 F.3d 39, 44 (2d Cir.2011) (one-morning closure during voir dire that lasted about a week was too insignificant to support ineffective assistance claim predicated on counsel’s failure to object); Barrows v. United States, 15 A.3d 673, 679-81 (D.C.2011) (upholding conviction on plain-error review where trial judge, on the record, closed courtroom for voir dire).