Jim ROBINSON, Appellant–Plaintiff,

v.

Bruce GAZVODA and Sabrina
Gazvoda, Appellees–
Defendants.

No. 55A01–0204–CV–128.

Court of Appeals of Indiana.

March 4, 2003.

Clifford W. Shepard, Indianapolis, IN, Attorney for Appellant.

Steven C. Litz, Monrovia, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Jim Robinson, the tenant, argues that the trial court erred in finding that Bruce Gazvoda, the landlord, complied with the Indiana security deposit statute. In particular, the tenant argues that there is no evidence in the record to support the trial court's finding that the landlord mailed to him an itemized list of repair costs as required under Indiana Code §§ 32–7–5–12(a) and 32–7–5–14. Because we find that the landlord failed to provide the tenant with a list of repair costs within forty-five days after receiving the tenant's new address, we reverse and require the landlord to return the tenant's security deposit and pay the tenant's attorney's fees and court costs.

### Facts and Procedural History

On February 1, 2000, Robinson entered into a lease agreement with Gazvoda[1] to rent a home in Martinsville, Indiana. Around that time, Robinson provided Gazvoda with a $300 security deposit. Robinson paid the monthly rent of $525 through April 2001. Robinson phoned Gazvoda around April 30, 2001, to notify him that Robinson would be vacating the premises and soon would provide him with a new mailing address. Before vacating the premises, Robinson had the carpets professionally cleaned and also placed a change of address notice with the postal service. Also, according to Robinson's testimony, Robinson mailed a handwritten letter by first-class mail on or about May 5, 2001, to Gazvoda notifying him of Robinson's new mailing address. Robinson failed to make a copy of the alleged letter, and Gazvoda stated that he never knew of Robinson's new address.

Fifteen days after the tenancy ended, Gazvoda mailed the following letter to Robinson at the vacated rental property address:

> After taking possession of my rental unit in which you were a tenant of, residing at 3404 Valley View Dr. Martinsville, we performed an inspection of the premises on May 4, 2001. We found several descrepancies [sic] and violations of the rental lease in which you signed.
>
> Therefore your rental deposit of $300.00 is not returnable and voided! We completed a thorough inspection of the unit. The following is [sic] just a few of the damages that well exceed the $300.00 rental deposit in which you are requesting.
>
> 1. The entire unit needed painted, just 14 months earlier the walls were in good shape.
>
> 2. Several doors was [sic] damaged and destroyed.
>
> 3. The grass wasn't cut.
>
> 4. The entire unit[']s carpet was damaged and or unrepairable.
>
> 5. There was drywall damage everywhere.

Appellant's App. p. 46. During the trial, the parties designated the May 15, 2001,

---

1. The lease agreement was specifically between Robinson and Bruce's Investment Properties, LLC; but, Robinson did not name that entity as a defendant. Instead, Robinson named Bruce Gazvoda and Sabrina Gazvoda, his wife, as defendants. However, because Bruce and Sabrina Gazvoda do not contest that they were personally named as defendants, we will continue to refer to the defendants as "Gazvoda" throughout this opinion.

letter as Defendant's Exhibit A. Robinson testified that he never received this letter.

Gazvoda did not include an estimated cost of repair for each listed damage item with the May 15, 2001, letter. The estimated repair cost list was not prepared until May 21, 2001. During the trial, the parties designated the estimated repair cost list as Defendant's Exhibit B. However, the following testimony during the trial reveals that Gazvoda never sent Robinson a copy of the list known as Exhibit B:

Robinson's Attorney: "And when did you send anything in writing to supplement this Defendant's Exhibit A letter?"

Gazvoda: "I didn't. I didn't send anything except for that?"

Robinson's Attorney: "Okay. This ..."

Gazvoda: "I told you I couldn't find him. I didn't know where he was."

Robinson's Attorney: "Just to be very clear then this Exhibit A, Defendant's Exhibit A, is the exclusive document. The one that you ever sent to Mr. Robinson?"

Gazvoda: "That's it. Right there, you got it in your hand."

Robinson's Attorney: "All right."

Appellant's App. p. 15.

On July 12, 2001, Robinson mailed Gazvoda by certified mail a typewritten letter notifying Gazvoda of his new mailing address and requesting the return of his security deposit. In that letter, Robinson stated that "I sent you my new address" and that "[i]t has been 70 days since I moved out." Appellant's App. p. 44. Gazvoda admits that he received this certified letter and signed for it on July 23, 2001.

On August 29, 2001, Robinson filed a notice of claim in small claims court for $300.00, the amount of his security deposit. On September 27, 2001, Gazvoda filed a counterclaim against Robinson for alleged damages to the property caused by Robin-

son. After a brief trial, the trial court issued the following Entry and Order:

On February 12, 2002 evidence and argument were heard during a bench trial in this case. The Court took the matter under advisement and now finds the following:

1. That the evidence is disputed as to whether the Defendants/Counter-Plaintiffs complied with I.C. 32-7-5 *et seq.* in that Robinson claims never having received the damage statement the Gazvoda's [sic] testified they had mailed to Robinson despite Robinson's testimony that he did file a forwarding address with the U.S. Post Office and having subsequently received mail by that order.

2. That the Court finds that the Gazvoda's [sic] did comply with the statute by mailing their damage statement (Exhibits A & B) to the tenant's address at the rental.

3. That the evidence established that there was damage to the unit in an amount exceeding the damage deposit and therefore the Gazvoda's [sic] were entitled to keep the damage deposit. However, because the Gazvoda's [sic] chose not to pursue further damages at that time, the Court now declines to find any further amount is due on the counter-claim.

Therefore, the Court finds for the Defendants on the original claim with costs versus the Plaintiff and denies the counter-claim for further damages.

Appellant's App. p. 4. This appeal ensued.

## Discussion and Decision

■ Robinson argues that the trial court erred in finding that Gazvoda complied with the Indiana security deposit statute. In particular, Robinson argues that there is no evidence to support the

trial court's finding that Gazvoda mailed Robinson an itemized list of damages as required under Indiana Code §§ 32–7–5–12(a) and 32–7–5–14. Judgments of a small claims court "shall be subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), "On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." A judgment is clearly erroneous if the record leaves us with a firm conviction that the trial court has made a mistake and when the record contains no facts or inferences therefrom supporting it. *Learman v. Auto Owners Ins. Co.*, 769 N.E.2d 1171, 1174 (Ind.Ct.App. 2002), *trans. denied.*

In order for Gazvoda to have prevailed at the trial court level, he needed to show that he complied with the Indiana security deposit statute.[2] In pertinent part, the security deposit statute provides:

Upon termination of a rental agreement, all of the security deposit held by the landlord shall be returned to the tenant, except for any amount applied to:

(1) the payment of accrued rent;

(2) the amount of damages that the landlord has or will reasonably suffer by reason of the tenant's noncompliance with law or the rental agreement; and

(3) unpaid utility or sewer charges that the tenant is obligated to pay under the rental agreement;

all as itemized by the landlord in a written notice delivered to the tenant together with the amount due within forty-five (45) days after termination of the rental agreement and delivery of possession. The landlord is not liable under this chapter until supplied by the tenant in writing with a mailing address to which to deliver the notice and amount prescribed by this subsection. Unless otherwise agreed, the tenant is not entitled to apply a security deposit to rent.

Ind.Code § 32–7–5–12(a) (1998). Another related section of the security deposit statute provides that:

In case of damage to the rental unit or other obligation against the security deposit, the landlord shall mail to the tenant, within forty-five (45) days after the termination of occupancy, an itemized list of damages claimed for which the security deposit may be used as provided in section 13 of this chapter, including the estimated cost of repair for each damaged item and the amounts and lease on which the landlord intends to assess the tenant. The list must be accompanied by a check or money order for the difference between the damages claimed and the amount of the security deposit held by the landlord.

Ind.Code § 32–7–5–14 (1998).

Robinson argues, and Gazvoda concedes, that Gazvoda never sent Exhibit B, the itemized list of repair costs, to Robinson and that Exhibit A, Gazvoda's first letter, alone does not satisfy the itemized list of repair costs requirement of the statute. Appellee's Br. p. 3.[3] Nevertheless, Gazvoda

2. At all relevant times to this appeal, the security deposit statute was found at Indiana Code ch. 32–7–5. *See* 1989 Ind. Acts, P.L. 277, § 1. However, we note that recently the security deposit statute has been recodified at Indiana Code ch. 32–31–3. *See* 2002 Ind.

Acts, P.L. 2, § 128 (repealing Indiana Code § 32–7–5–1 through Indiana Code § 32–7–5–19 effective July 1, 2002).

3. We note that prior to the filing of Gazvoda's brief, the Indiana Supreme Court handed

asserts that the trial court's judgment was still proper because Robinson's failure to supply him with a forwarding address within forty-five days of the termination of the lease eliminated the itemized list requirement. In support of this argument, Gazvoda draws our attention to *Lae v. Householder*, 767 N.E.2d 1044 (Ind.Ct. App.2002), *trans. granted. Lae* held that a landlord's duty to provide the written itemization is tolled until a tenant supplies a forwarding address to the landlord; and, if the tenant does not supply the forwarding address within forty-five days after the termination of the lease, the landlord cannot violate the terms of the security deposit statute because the landlord's own forty-five day notice period never begins to run. *Id.* at 1048–49. However, we note that the Indiana Supreme Court granted transfer in that case, and therefore the opinion to which Gazvoda cited has been vacated. *See* Ind. Appellate Rule 58(A). Thus, the precedent Gazvoda relies upon no longer exists.

Nevertheless, while for precedent purposes *Lae* is useless to us, we will still consider the analysis contained in the former *Lae* decision to help us in this case. Initially, we note that in arriving at its conclusion, the *Lae* Court relied upon *Raider v. Pea,* 613 N.E.2d 870 (Ind.Ct. App.1993). *Lae,* 767 N.E.2d at 1048. According to *Raider,* under Indiana Code §§ 32–7–5–12(a) and 32–7–5–14, a tenant is required to provide a landlord with his change of address before the duty of the landlord to provide an itemized list of repair costs within forty-five days arises. *See Raider,* 613 N.E.2d at 872–73, 872 n. 1. The *Raider* Court noted that it could find no explanation for why the legislature wrote Indiana Code § 32–7–5–12(a) with language requiring tenants to notify landlords of their new address while nearly identical Indiana Code § 32–7–5–14 has no such requirement. *Id.* However, the *Raider* Court did not require a tenant to provide his address within forty-five days of termination of the rental agreement or else waive his right to the security deposit, as required by *Lae.* Instead, *Raider* held that Indiana Code § 32–7–5–12(a) "imposes an affirmative obligation upon the tenant to provide a mailing address to the landlord to facilitate giving the required forty-five day notice, and *it tolls the running of the forty-five day period against the landlord until the tenant meets his obligation." Id.* at 872 (emphasis added).

 Faced with differing interpretations of the statute by panels of this Court, we find that we must turn to the language of the statute and the intent behind its passage for guidance. If a statute is unambiguous, we may not interpret it but must give the statute its clear and plain meaning; however, if a statute is ambigu-

---

down *Turley v. Hyten,* 772 N.E.2d 993 (Ind. 2002). In that case, our supreme court held that a landlord fulfilled the purpose of the repair costs notice requirement by sending a letter which stated (1) the property damage was of a type that could not have been estimated quickly due to its extensive nature, (2) the amount of repair costs overwhelmingly exceeded the amount of the security deposit, and (3) the security deposit also was being retained for the landlord's lost rent due to damage. *Id.* at 997. Because Gazvoda conceded that Exhibit A failed to meet the requirements of the statute, he has waived our

review of that issue. *See York v. State,* 380 N.E.2d 1255, 1260, 177 Ind.App. 568, 575–76 (1978). In any event, *Turley* can be distinguished from this case. Here, the property damage alleged was not of a type that an estimate could not have been prepared quickly. The evidence even shows that an estimate for repair costs was prepared within a few weeks of the tenant vacating. Also, the differential between the alleged damage and the security deposit was not as dramatic here as it was in *Turley.* Finally, Gazvoda made no claim that he retained the security deposit for lost rent due to damage caused by Robinson.

ous, we must ascertain the legislature's intent and interpret the statute to effectuate that intent. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind. 2001). A statute is ambiguous if it is susceptible to more than one reasonable and intelligible interpretation. *Town of Plainfield v. Town of Avon,* 757 N.E.2d 705, 710 (Ind.Ct.App.2001), *trans. denied.* We accept that the statutory provision at issue in this case, Indiana Code § 32–7–5–12(a), may be subject to more than one interpretation. That section requires a landlord to send "a written notice delivered to the tenant together with the amount due within forty-five (45) days *after termination of the rental agreement and delivery of possession.*" Ind.Code § 32–7–5–12(a) (emphasis added). However, the next sentence qualifies this statement by stating, "The landlord is not liable under this chapter until supplied by the tenant in writing with a mailing address to which to deliver the notice and amount prescribed by this subsection." *Id.* Yet, no time frame is expressly given during which a tenant must provide the landlord with notice of a new address. Hence, it could be argued, as done in *Lae,* that the two sentences should be read to require that both the landlord's notice of damages to the tenant as well as the tenant's notice of new address to the landlord must be delivered within forty-five days after termination of the tenancy. Alternatively, it may be argued, as construed in *Raider,* that the landlord's obligation to deliver notice of damages within forty-five days after termination would be tolled until receiving notice of the tenant's new address, even if the tenant provides notice beyond the initial forty-five days after vacating the premises. Faced with this ambiguity, we must consider the legislative intent and purpose behind the security deposit statute in general.

When interpreting the words of a single section of a statute, we must construe them with due regard for all other sections of the act and with due regard for the legislative intent so that the spirit and purpose of the act are carried out. *Park 100 Dev. Co. v. Ind. Dep't of State Revenue,* 429 N.E.2d 220, 222–23 (Ind.1981). Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Mayes v. State,* 744 N.E.2d 390, 393 (Ind.2001). This Court is required to determine and then apply the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Turner v. Bd. of Aviation Comm'rs,* 743 N.E.2d 1153, 1161 (Ind.Ct.App.2001), *trans. denied.* In so doing, we consider the objects and purposes of the statute, as well as the effects and consequences of such an interpretation. *Id.* at 1161–62. We will not read into a statute that which is not the manifest intent of the legislature. *Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 946 (Ind.1999), *reh'g denied.* Hence, it is as important to recognize what a statute does not say as it is to recognize what it does say. *Clifft v. Ind. Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995). "The first and often the last step in interpreting a statute is to examine the language of the statute." *State v. Hensley,* 716 N.E.2d 71, 76 (Ind.Ct.App.1999), *trans. denied.* We are guided by the principle that the best evidence of the legislature's intent is the language found in the statute itself. *Hilburt v. Town of Markleville,* 649 N.E.2d 1036, 1038 (Ind.Ct.App.1995), *trans. denied.*

After reviewing the language of the entire security deposit statute, considering the legislative intent and policies behind its enactment, and balancing the con-

sequences of our interpretation of the statute, we conclude that Indiana Code § 32–7–5–12(a) fails to provide a statute of limitations requiring tenants to provide notice of their new address to their landlords after vacating the premises or else forfeit their security deposits. We read the forty-five day requirement, as first articulated in *Raider*, to apply only to how long a landlord has to respond after receiving notice of a tenant's new address. Failure by the tenant to provide his new address within the initial forty-five days after vacating the premises tolls the reciprocal obligation of the landlord to provide the tenant with an itemized list of repair costs for a reasonable period of time until the landlord receives notice of the tenant's new address.

There are a number of reasons for adopting the *Raider* rationale. First, there is no doubt that in other contexts the legislature is well aware how to provide time limitations upon claims or else have them forfeited. *See* Ind.Code § 34–13–3–6(a) (barring suit under Indiana Tort Claims Act unless notice of tort claim filed within 270 days after loss); Ind.Code § 24–5–0.5–5(a) (limiting time allowed to file claim under Indiana Deceptive Consumer Sales Act); Ind.Code § 30–4–6–12 (providing three year statute of limitations for claims against a trustee for breach of trust); Ind.Code § 34–11–2–1 (limiting right to sue for certain employment related actions after two years from act or omission); and, Ind.Code § 34–18–7–1 (providing two year statute of limitations for medical malpractice claims). If the legislature wished to impose a time limitation upon tenants here, it could have done so as clearly and unambiguously as it has done in these other contexts. Instead, the legislature chose only to restrict how long a landlord would have to respond after termination of the rental agreement. In our opinion, it is a strain on the purpose of the security deposit statute to read a corresponding time restriction on tenants from this single restriction on landlords.

Second, after reviewing the language of the entire security deposit statute, we find that the overarching purpose of the statute is for the protection and benefit of tenants. Many provisions of the statute deal with penalties for landlords who fail to comply with the notice requirement. *See* I.C. §§ 32–7–5–12(b) (tenant entitled to return of security deposit and attorney's fees), –15 (landlord damage waiver), –16 (tenant also entitled to court costs). Additionally, Indiana Code § 32–7–5–13 limits the potential damages for which a security deposit may be applied; Indiana Code § 32–7–5–17 prohibits the overall waiver of the security deposit statute; and, Indiana Code § 32–7–5–18 requires a landlord to disclose in writing the identity of any person working as the landlord's agent or manager. When reading all these subsections together, we determine that the legislature intended the security deposit statute to be primarily for the protection of tenants.[4] Thus, we must construe any ambiguous provisions with the overarching purpose of the statute in mind. In this case, requiring tenants to send notice of their new address within forty-five days after vacating or face forfeiture of their security deposits is not consistent with the goals of the security deposit statute. This seems especially so because the statute does not impose a duty on the landlord to notify the tenant that within forty-five days the tenant waives the return of the security deposit.

---

4. Even the *Lae* Court recognized as much when it stated, "Although the statute is primarily for the benefit of the tenant, the statute does place the initial burden on the tenant to supply a forwarding address to the landlord." *Lae*, 767 N.E.2d at 1048.

Finally, we consider the effects and consequences of our interpretation of the statute. If we construe the forty-five day time limitation only to apply to landlords, more tenants will have their day in court to seek recovery of their security deposits. This seems appropriate in light of the goals of the statute. It also fits with the overall experience level of most landlords and tenants because most landlords will be more informed about legal requirements and educated about the legal system than a vast majority of tenants. To read the time requirement any other way would be to defeat the whole purpose of the statutory scheme. Because the overall purpose of the statute is better served by the *Raider* rationale, we choose to follow that interpretation.

In applying our interpretation of Indiana Code § 32–7–5–12(a) to this case, we find that the trial court erred in failing to award Robinson his security deposit. It is undisputed that Robinson vacated the rental property on or about May 1, 2001. Also, the evidence shows that on July 23, 2001, within a reasonable time after vacating the apartment, Robinson mailed Gazvoda a certified letter with his new address.[5] It is also undisputed that Gazvoda failed to send Robinson an itemized list of repair costs within forty-five days after receiving notice of Robinson's new address. In fact, it was not until September 27, 2001, well after forty-five days, that Robinson ever heard anything from Gazvoda. Therefore, not only can this Court find no evidence to support the trial court's judgment, the only conclusion that we can draw from all the evidence is that Gazvoda failed to comply with Indiana Code §§ 32–7–5–12(a) and 32–7–5–14.

Because the trial court erred in concluding that Gazvoda complied with the security deposit statute when all the evidence points to the contrary, its judgment was clearly erroneous and must be reversed. Gazvoda's failure to comply with the security deposit statute requires him to return the $300.00 security deposit to Robinson as well as pay Robinson's attorney's fees and court costs. *See* I.C. § 32–7–5–16; *Pinnacle Props. v. Saulka,* 693 N.E.2d 101, 104–05 (Ind.Ct.App.1998), *trans. denied.* Therefore, we remand to the trial court to determine the proper assessment of attorney's fees and costs.

### Conclusion

We find that there is no evidence in the record to support the trial court's conclusion that Gazvoda mailed Robinson an itemized list of repair costs. In addition, after interpreting the ambiguity in the security deposit statute, we hold that the statute's purpose is for the protection of tenants' rights. Although we encourage tenants to promptly and timely notify landlords of their new addresses, we hold that their failure to do so within the initial forty-five days after vacating the premises may, as in this case, toll the reciprocal obligation of landlords to provide tenants with an itemized list of repair costs for a reasonable period of time. Once landlords receive such notice, the statute then requires them to provide tenants with an itemized list of repair costs within forty-five days. Because we find that Gazvoda failed to provide Robinson with an itemized list of repair costs within forty-five days after receiving Robinson's new address, we conclude that Gazvoda failed to comply with the security deposit statute. Therefore, we reverse and remand with

**5.** During the trial, no direct question was put to Gazvoda as to whether or not he received Robinson's alleged May 5, 2001, letter supplying his new address. However, from his answers to other questions, we can glean a general denial. Ultimately, though, resolution of this disputed question of fact has no bearing on the outcome of our decision.

instructions that the trial court award Robinson his $300.00 security deposit and determine Robinson's attorney's fees and court costs.

Judgment reversed and remanded for proceedings consistent with this opinion.

BAKER, J., and BARNES, J., concur.