The **COUNTY COUNCIL OF PORTER COUNTY, Appellant–Plaintiff,**

v.

**NORTHWEST INDIANA REGIONAL DEVELOPMENT AUTHORITY; James Kopp, as Porter County Auditor; James Murphy, as Porter County Treasurer, Appellees–Defendants.**

No. 37A04–1004–CT–291.

Court of Appeals of Indiana.

March 2, 2011.

Mitchell A. Peters, Miller Fisher Law LLC, Merrillville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Thomas M. Fisher, Solicitor General, Heather L. Hagan, Deputy Attorney General, Ashley Tatman Harwel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee, Northwest Indiana Regional Development Authority.

## OPINION

FRIEDLANDER, Judge.

In 2005, the Indiana General Assembly created the Northwest Indiana Regional Development Authority (the RDA) to encourage and facilitate economic development in Northwest Indiana. *See* Ind.Code Ann. §§ 36–7.5–1–1 through 36–7.5–4–17 (West, Westlaw through 2010 2nd Regular Sess.) (hereafter referred to as the RDA Act). The RDA is funded by mandatory payments from Porter County and Lake County and the cities of Gary, East Chicago, and Hammond. I.C. §§ 36–7.5–2–3 and 36–7.5–4–2. Porter County funds its payment through a county economic development tax, or CEDIT. In April 2009, the Porter County Council (the Council) voted to withdraw Porter County from the RDA. In June 2009, the Indiana legislature responded by passing two amendments providing that if Porter County "ceases to be a member" of the RDA, municipalities within the county could join and thereby compel county officials to continue paying CEDIT revenues to the RDA. *See* I.C. § 36–7.5–4–2 and Ind.Code Ann. § 6–3.5–7–13.1 (West, Westlaw through 2010 2nd Regular Sess.).

On August 28, 2009, the Council filed a Verified Complaint for Declaratory and Injunctive Relief against the RDA, Porter County Auditor James Kopp (the Auditor), and Porter County Treasurer James Murphy (the Treasurer). In it, the Council

sought a declaratory judgment that the Council "has the ability to withdraw from the RDA, and [the Council] did properly withdraw from the RDA." *Appellant's Appendix* at 11. The Council also thereby challenged the constitutionality of the aforementioned amendments under article 4, §§ 22 and 23 of the Indiana Constitution. Finally, the Council sought via the complaint to enjoin the Auditor and Treasurer from making any future payments to the RDA.

On September 3, 2009, the Auditor and the Treasurer executed a Partial Settlement Agreement with the Council providing that those officials agreed with the request for a preliminary injunction and wished to resolve their portion of the dispute by depositing into an escrow account the amount of the payment to the RDA. The court entered an order pursuant to that agreement and the Auditor and Treasurer deposited the mandatory RDA contributions into an escrow account. On September 11, 2009, the RDA filed a motion asking the court to reconsider and vacate this order. By motion of the RDA, venue for the case was transferred from Porter County to Jasper Circuit Court.

Both sides moved for summary judgment. Also, the Auditor and the Treasurer filed a "Motion to Withdraw Joinder in County Council's Motion for Summary Judgment and Motion Seeking Order Affirming the Validity of Partial Settlement Agreement." *Id.* at 382. Following a January 25, 2010 hearing, in an order dated April 9, 2010, the court determined the relevant statutes show that "Porter County is an 'eligible county' and a member of the RDA[,]" and that "there was no ex-

press or implied right to withdraw[.]" *Id.* at 553, 554. The court found that the Council's constitutional challenges concerning the amendments were not yet ripe for review. The court granted the RDA's motion for summary judgment, denied the Council's motion for summary judgment, vacated the partial settlement agreement, denied the Council's Complaint for Declaratory Judgment and Injunctive Relief, and granted the RDA's Verified Cross–Claims for Mandate, Declaratory Judgment, and Injunctive Relief against the Treasurer and the Auditor. The court ordered the funds held in escrow to be paid to the RDA. Moreover, it directed the Treasurer and the Auditor to make all future payments to the RDA as required by statute.

The Council petitioned the court to certify its order as a final appealable judgment and the trial court granted that request on April 21, 2010.[1] The Council presents the following restated issues for review:

1. Can Porter County withdraw from the RDA?

2. Does the RDA Act violate the Indiana Constitution by mandating Porter County's membership and participation in the RDA?

We affirm.

We set forth the following facts in addition to those recited above. Because, as stated by our legislature, certain counties in Northwest Indiana "face unique and distinct challenges and opportunities related to transportation and economic development that are different in scope and type than those faced by other units of local government in Indiana", *id.* at 489 (quoting Northwest Indiana Regional Development Authority Act, Pub.L. No. 214–2005,

---

1. The Treasurer and the Auditor, as cross-claim defendants, did not file a notice of appeal. Therefore, the rulings on the RDA's Verified Cross–Claims for Mandate, Declaratory Judgment and Injunctive Relief, as well as the injunctions requiring the Auditor and the Treasurer to continue paying Porter County's annual contributions to the RDA, are not before us.

§ 89 (July 1, 2005)), the RDA was established in order to fund numerous economic development and mass transportation projects in that region of the state. The RDA Act adopted eligibility guidelines set out in terms of population ranges that essentially limited membership in the RDA at the time to Lake, Porter, and (if it so chose) LaPorte Counties and the municipalities of Gary, East Chicago, and Hammond. *See* former version of I.C. § 36–7.5–1–11. Porter County was the only county fitting the criteria of the then-existing version of I.C. § 36–7.5–1–11(2), i.e., a county with a population of at least 145,000 but less than 148,000.

I.C. § 36–7.5–4–2 established a Development Authority Fund (the Fund) and provided that beginning in 2006, the fiscal officer of each eligible city and county must annually contribute $3,500,000 to the RDA for deposit into the Fund. The legislature established specific instructions for counties with a population of between 145,000 and 148,000 (both parties acknowledge that Porter County is the only Indiana county in this population range) concerning the use of CEDIT funds to pay this annual contribution, as follows:

> If the county economic development income tax rate is increased after April 30, 2005, in a county having a population of more than one hundred forty-five thousand (145,000) but less than one hundred forty-eight thousand (148,000), the first three million five hundred thousand dollars ($3,500,000) of the tax revenue that results each year from the tax rate increase shall be paid by the county treasurer to the treasurer of the Northwest Indiana Regional Development Authority under IC 36–7.5–4–2 before certified distributions are made to the county or any cities or towns in the county under this chapter from the tax revenue that results each year from the tax rate increase. . . . In a county having a popula-

tion of more than one hundred forty-five thousand (145,000) but less than one hundred forty-eight thousand (148,000), all of the tax revenue that results each year from the tax rate increase that is in excess of the first three million five hundred thousand dollars ($3,500,000) that results each year from the tax rate increase must be used by the county and cities and towns in the county for homestead credits.

I.C. § 6–3.5–7–13.1(b)(4). Moreover, in P.L. 214–2005 § 91, the legislature also established non-code provisions that the council of an eligible county under I.C. § 36–7.5–1–11 could, before July 1, 2005, adopt an ordinance to impose or increase a CEDIT. This provision further specified that if a county with a population of between 145,000 and 148,000 did so, the first $3.5 million of revenue generated therefrom must be applied to fulfilling its RDA funding obligation.

A review of the RDA Act reveals that Porter County was automatically made a member of the RDA when the legislation was enacted. On May 24, 2005, the Council passed Ordinance 05–5–24, which increased the Porter County CEDIT by five-tenths of one percent for the purpose of funding its participation in the RDA. Almost four years later, on April 8, 2009, the Council voted to withdraw from the RDA. On July 1, 2009, the Indiana legislature passed its biennial budget, including amendments to some of the foregoing RDA and CEDIT provisions. The following language in I.C. § 36–7.5–4–2(a), which we will refer to henceforth as the RDA Amendment, was added:

> However, if a county having a population of more than one hundred forty-five thousand (145,000) but less than one hundred forty-eight thousand (148,000) ceases to be a member of the develop-

ment authority and two (2) or more municipalities in the county have become members of the development authority as authorized by IC 36–7.5–2–3(i), the transfer of county economic development income tax transferred under IC 6–3.5–7–13.1(b)(4) is the contribution of the municipalities in the county that have become members of the development authority.

The legislature also amended I.C. § 6–3.5–7–13.1(b) by adding the following language, which we will refer to as the CEDIT Amendment:

> If a county having a population of more than one hundred forty-five thousand (145,000) but less than one hundred forty-eight thousand (148,000) ceases to be a member of the northwest Indiana regional development authority under IC 36–7.5 but two (2) or more municipalities in the county have become members of the northwest Indiana regional development authority as authorized by IC 36–7.5–2–3(i), the county treasurer shall continue to transfer the three million five hundred thousand dollars ($3,500,-000) to the treasurer of the northwest Indiana regional development authority under IC 36–7.5–4–2 before certified distributions are made to the county or any cities or towns in the county.

Notwithstanding that the Council had opted out of the RDA, the Treasurer and the Auditor decided to continue to make CEDIT payments into the RDA fund upon the basis of the foregoing amendments. Arguing that the RDA Amendment and the CEDIT Amendment were unconstitutional special laws in violation of article 4, §§ 22 and 23 of the Indiana Constitution, the Council initiated the proceedings culminating in this appeal, as set out in detail at the outset of this opinion.

On January 25, 2010, a hearing was held on the RDA's Motion to Reconsider and Vacate the Partial Settlement Agreement and on the RDA's and Council's respective motions for summary judgment. On April 9, 2010, Judge John D. Potter issued an order holding that Porter County has no right to withdraw from the RDA and that the constitutionality of the CEDIT and RDA Amendment were not ripe for review because the Council's challenge to those amendments predated their effective date. On April 21, 2010, Council filed its Motion for Certification of Order as Final Appealable Judgment, which was granted.

The Council challenges the trial court's denial of its motion for summary judgment and simultaneous granting of the RDA's motion for summary judgment. Our standard of review in appeals from the grant or denial of a motion for summary judgment is well established:

> When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party.

*Kroger Co. v. Plonski,* 930 N.E.2d 1, 4–5 (Ind.2010) (some citations omitted). The trial court's decision on summary judgment " 'enters appellate review clothed with a presumption of validity.' " *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.,* 867 N.E.2d 203, 211 (Ind.Ct.App.2007) (quoting *Malone v. Basey,* 770 N.E.2d 846,

850 (Ind.Ct.App.2002), *trans. denied* ). Moreover,

> [a] grant of summary judgment may be affirmed upon any theory supported by the designated evidence. While the trial court here entered specific findings of fact and conclusions of law in its order granting summary judgment for the appellees, such findings and conclusions are not required and, while they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment.

*Van Kirk v. Miller,* 869 N.E.2d 534, 539–40 (Ind.Ct.App.2007) (citations omitted), *trans. denied.*

### 1.

The Council contends the trial court erred in determining that Porter County cannot withdraw from the RDA. The RDA and the Council both acknowledge that the legislation that created the RDA, i.e., I.C. § 36–7.5–1–1 through I.C. § 36–7.5–4–17, is silent about participant counties' ability to withdraw from the RDA. The two parties in this dispute draw opposing inferences from this silence. In effect, the RDA contends that the legislature's failure to mention a right to withdraw means there is no such right. Conversely, the Council contends that the most notable aspect of this silence is the lack of a prohibition *against* withdrawal. Therefore, according to the Council, because the legislation has not forbidden withdrawal, Porter County can withdraw.

■ We will address first what we perceive to be the Council's strongest argument in favor of its interpretation of the statute to permit withdrawal, which is that the CEDIT Amendment and the RDA Amendment each addressed the contingency of Porter County ceasing to be a member of the RDA. *See* I.C. § 36–7.5–4–2(a) and I.C. § 6–3.5–7–13.1(b). The Council contends this reflects that the Indiana General Assembly intended at the time it passed the RDA Act that Porter County had the right to withdraw from the RDA. We cannot agree.

■ We are called upon to determine the meaning of the RDA Act in this respect.

> "If a statute is unambiguous, we may not interpret it but must give the statute its clear and plain meaning; if a statute is ambiguous, we must ascertain the legislature's intent and interpret the statute to effectuate that intent. *Robinson v. Gazvoda,* 783 N.E.2d 1245, 1249–50 (Ind.Ct.App.2003), *trans. denied.* 'A statute is ambiguous if it is susceptible to more than one reasonable and intelligible interpretation.' *Id.* at 1250. If interpretation is necessary, the express language of the statute controls and the rules of statutory construction apply. *Bushong v. Williamson,* 790 N.E.2d 467, 471 (Ind.2003). We are required to determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* 'In so doing, we should consider the objects and purposes of the statute as well as the effects and repercussions of such an interpretation.' *Id.* The legislative intent governing the provision as a whole prevails over the strict literal meaning of any word or term. *Id.*"

*Carter v. Carolina Tobacco Co., Inc.,* 873 N.E.2d 611, 625–26 (Ind.Ct.App.2007) (quoting *Med. Assurance of Ind. v. McCarty,* 808 N.E.2d 737 (Ind.Ct.App. 2004)).

As indicated above, the legislation creating the RDA was silent on the question of

the RDA's members' ability to withdraw therefrom. After the Council purported to withdraw Porter County from the RDA, the Indiana General Assembly responded with amendments providing, in essence, that even if Porter County withdrew from the RDA, the county nevertheless was responsible for paying the fees associated with membership. We are not inclined to view this legislative response to Porter County's attempt to withdraw as reflecting the view of the 114th Indiana General Assembly—the legislative body that adopted the RDA Act—that Porter County could opt out at its pleasure. Rather, we conclude the amendments, which it should be noted were passed by a different legislative body, i.e., the *116th* Indiana General Assembly, were legislative responses to Porter County's attempt to withdraw from the RDA, or more specifically, to Porter County's attempt to escape its financial obligations under the RDA Act.

Northwest Indiana has been economically challenged for several decades for a number of reasons. Over the years, the Indiana General Assembly has undertaken several measures in an attempt to reverse this trend, but none proved successful. The RDA represents yet another attempt and a different approach to those concerns—this one emphasizing regional planning rather than local development. The RDA's 2009 annual report described it thus: "[O]fficials understood that but for a regional development entity with statutory funding authority, large-scale catalytic projects could languish as great concepts on the shelf." Northwest Indiana Regional Development Authority, *Annual Report: Fiscal Year 2009* at p. 8 (Dec. 21, 2009), http://www.in.gov/rda/files/RDA_FY2009_Annual_Report.pdf (last visited Feb. 9, 2011).

The RDA Act was enacted by the legislature because it recognized that Northwest Indiana, including most notably Lake and Porter Counties, faced "unique and distinct challenges" in both transportation and economic development that required a "unique approach" to allow the area to fully develop its economic potential. P.L. 214–2005, § 89. The legislature intended that the funds allocated by the RDA Act should be used for the following purposes:

(1) [A]cquiring, constructing, equipping, owning, leasing, and financing projects and facilities for lease to or for the benefit of eligible political subdivisions under this article;

(2) funding and developing the Gary/Chicago International Airport expansion and other airport authority projects, commuter transportation district and other rail projects and services, regional bus authority projects and services, regional transportation authority projects and services, shoreline development projects and activities, and economic development projects in northwestern Indiana; and

(3) assisting with the funding of infrastructure needed to sustain development of an intermodal facility in northwestern Indiana.

I.C. § 36–7.5–2–1.

Clearly, the legislature's goals and purposes in enacting the RDA Act were neither trivial nor transitory. The compelling nature of the legislature's concerns in enacting the RDA was reflected in the nature and scope of the ends to which the RDA's resources and efforts would be directed. Indeed, since its creation, the RDA has played a significant role in several major projects in the region, including the development of the Gary Airport, the Chicago Dash commuter bus, the Marquette Greenway, and the Portage Lakefront Pavilion and Park. Taken together, these factors do not evince an intention on the part of the Indiana General Assembly that Porter

County could sever its membership in the RDA at its pleasure.

We note one final consideration that counsels in favor of our conclusion that the RDA Act did not authorize Porter County to withdraw from the RDA. The legislature expressly provides the means by which other local governments that participate in local development authorities may elect to join or withdraw their memberships in those organizations. In 2006, the Indiana General Assembly adopted Public L. No. 47–2006, which permitted LaPorte County to opt in to the RDA should it choose to do so. *See* I.C. § 36–7.5–2–3(e). Two years after establishing the RDA, the General Assembly enacted Pub.L. No. 232–2007, which added I.C. § 36–7.6 *et seq.*, thereby providing a statutory framework for the creation of additional development authorities in other regions of Indiana. In these provisions, the General Assembly established a five-year minimum participation period for counties and cities electing to participate in a development authority and, significantly, also provided a mechanism for those entities to withdraw from a developmental authority. *See* Ind. Code Ann. § 36–7.6–2–5 (West, Westlaw through 2010 2nd Regular Sess.). These provisions reflect that when the General Assembly wishes to authorize withdrawal from a local development authority, it has demonstrated the ability and wherewithal to do so. *See also* Ind.Code Ann. § 36–9–3–4 (West, Westlaw through 2010 2nd Regular Sess.) (specifying the means to withdraw participation in regional transportation authorities). Therefore, if the General Assembly intended to permit Porter County to withdraw from the RDA, it knew how to do so.

In summary, in view of the nature and scope of the RDA's purpose, the fact that Porter County was automatically made a member of the RDA at its creation, and the fact that there is no provision in the RDA Act authorizing Porter County's withdrawal, we conclude that Porter County did not have a right to withdraw from the RDA.

2.

The Council contends that if the original legislation establishing the RDA Act is construed so as to forbid Porter County's withdrawal from the RDA, it is unconstitutional special legislation. We note here that the Council did not present this claim to the trial court. Rather, it challenged the constitutionality of the provisions that required Porter County to pay RDA fees regardless of whether Porter County withdrew membership from the RDA, i.e., the RDA and CEDIT Amendments. Clearly, a challenge to the constitutionality of the original RDA Act itself represents a fundamentally different question than a challenge to the aforementioned amendments, albeit on the same grounds, i.e., that they are forbidden special legislation. The former rests upon the claim that the RDA Act impermissibly targeted Porter County to join the RDA, while the latter rests upon the claim that the amendments to the RDA Act impermissibly compelled Porter County to pay funds to be administered by a group of which it was not a member.

 "Challenges to the constitutionality of a civil statute may be waived if they could have been raised to the trial court but were not." *Combs v. Tolle,* 816 N.E.2d 432, 439 n. 3 (Ind.Ct.App.2004). In *Duncan v. Duncan,* 764 N.E.2d 763, 769 (Ind.Ct. App.2002), *trans. denied,* we observed that waiver is not a jurisdictional limitation on our power to entertain such issues and we will not hold that an appellant waived an issue "in situations where doing so would be fundamentally unjust, such as where the issue did not become ripe for review until after judgment was entered." We note in this regard the Council's claim at

oral argument that the constitutionality of the original RDA Act did not become an issue until the trial court ruled as it did that Porter County could not withdraw from the RDA. The Council contends in its brief, however, that this constitutional challenge predated (and, logically, is therefore independent of) the amendments, *viz.*, "prior to the RDA and CEDIT Amendments being passed, the statutes were already special, unconstitutional legislation and unconstitutional under Indiana law." *Appellant's Brief* at 20–21. Thus, the argument is waived. *See Chidester v. City of Hobart*, 631 N.E.2d 908, 912–13 (Ind.1994) (our Supreme Court did not permit an appellant to raise various constitutional challenges to annexation statutes on the ground that "[c]ounsel may not raise these issues for the first time on appeal").

Judgment affirmed.

MATHIAS, J., and CRONE, J., concur.