Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**PAUL W. SWAIN, JR.**
Bloomington, Indiana

ATTORNEY FOR APPELLEE:

**JUSTIN STIMSON**
Moshe & Stimson LLP
Indianapolis, Indiana

FILED
Mar 07 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEER PARK MANAGEMENT, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1104-SC-161 |
| | ) | |
| GIOVANNI ZANOVELLO, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Valeri Haughton, Judge
Cause No. 53C08-1012-SC-4634

**March 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Deer Park Management (Deer Park) appeals a small claims judgment in favor of its former tenant Giovanni Zanovello. As Deer Park did not provide Zanovello a timely notice of the damages it claimed, we affirm.[1]

## FACTS[2] AND PROCEDURAL HISTORY

In June of 2008, Deer Park and Zanovello entered into a lease agreement for an apartment in Bloomington. The lease agreement was for twelve months, from August 26, 2008, through August 16, 2009. In January 2009 the parties extended the lease to August 16, 2010. In April 2010 the parties agreed Zanovello could move out on June 24. The Deer Park representative testified "we've altered the lease expiration date from August the 16th of 2010 to June the 24th of 2010." (Tr. at 20.) On May 6, 2010, Zanovello and Deer Park exchanged e-mails in which Zanovello expressed his willingness to "leave the apartment for good," (Appellee's App. at 8), but continue to pay rent until the end of the lease term. Deer Park

---

[1] As we affirm judgment for Zanovello, we need not address whether the trial court should have awarded Deer Park attorney's fees.

[2] Deer Park's Statement of Facts and Statement of Case are both rife with argument, which is inappropriate in those parts of an appellate brief. *Indiana High Sch. Athletic Ass'n, Inc. v. Schafer*, 913 N.E.2d 789, 791 (Ind. Ct. App. 2009). At the same time, the Statement of Facts is nearly devoid of any "facts relevant to the issues presented for review" as required by Ind. Appellate Rule 46(A)(6). A Statement of Facts should be a concise narrative of the facts stated in accordance with the standard of review appropriate to the judgment or order being appealed; it should not be argumentative. *Schafer*, 913 N.E.2d at 791; Ind. Appellate Rule 46(A)(6). The Deer Park Statement of Facts and Statement of Case are, in violation of that rule, transparent attempts to discredit Zanovello, and are plainly not intended to be a vehicle for informing this court. We prefer to decide cases on the merits, and choose to do so here. But we remind Deer Park that allegations of error may be waived where noncompliance with the rules of appellate procedure is so substantial it impedes our consideration of the errors. *See Ramsey v. Review Bd. of Ind. Dept. of Workforce Dev.*, 789 N.E.2d 486, 487 (Ind. Ct. App. 2003).

replied it would not "change this agreement," (*id*. at 7), but noted Zanovello's "apartment was shown almost daily due to [Zanovello's] request to have someone re-rent it early." (*Id*.) On May 13, 2010, Zanovello signed a document on Deer Park's letterhead captioned "Notice to Vacate and Move-out Inspection." (Appellant's App. at 9.) On that document Zanovello said he would vacate the apartment June 24,[3] and he provided his forwarding address. The move-out inspection was scheduled for June 24. Zanovello was unable to be present at the inspection and Deer Park would not reschedule it for an earlier date, but a friend represented him there and photographed the apartment. On July 27, Deer Park sent Zanovello a "move out letter," (Tr. at 23), itemizing damages Deer Park claimed Zanovello owed.[4] The Deer Park representative testified the letter represented "Deer Park's compliance with the 45 day damage deposit statute." (*Id*. at 25.)

## DISCUSSION AND DECISION

Where, as here, the party who had the burden of proof at trial appeals, it appeals from a negative judgment and will prevail only if it establishes the judgment is contrary to law. *Romanowski v. Giordano Mgmt. Group, LLC*, 896 N.E.2d 558, 562 (Ind. Ct. App. 2008). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court

---

[3] The Deer Park representative was asked whether "Zanovello was still occupying that premises up to and including June 24th." (Tr. at 17.) She testified "He still had possession of the lease and the apartment, he's actually not living there. . . . He had vacated." (*Id*.)

[4] The Deer Park representative so testified. The transcript reflects the letter was offered and admitted into evidence, but it does not appear Deer Park included it in its appendix.

reached a different conclusion.  *Id.*

Ind. Code § 32-31-3-14 provides:

Not more than forty-five (45) days after the termination of occupancy, a landlord shall mail to a tenant an itemized list of damages claimed for which the security deposit may be used under section 13 of this chapter. The list must set forth:
>   (1) the estimated cost of repair for each damaged item; and
>   (2) the amounts and lease on which the landlord intends to assess the tenant.

The landlord shall include with the list a check or money order for the difference between the damages claimed and the amount of the security deposit held by the landlord.

Ind. Code § 32-31-3-12 provides:

(a) Upon termination of a rental agreement, a landlord shall return to the tenant the security deposit minus any amount applied to:
>   (1) the payment of accrued rent;
>   (2) the amount of damages that the landlord has suffered or will reasonably suffer by reason of the tenant's noncompliance with law or the rental agreement; and
>   (3) unpaid utility or sewer charges that the tenant is obligated to pay under the rental agreement;

all as itemized by the landlord with the amount due in a written notice that is delivered to the tenant not more than forty-five (45) days after termination of the rental agreement and delivery of possession.  The landlord is not liable under this chapter until the tenant supplies the landlord in writing with a mailing address to which to deliver the notice and amount prescribed by this subsection.  Unless otherwise agreed, a tenant is not entitled to apply a security deposit to rent.
(b) If a landlord fails to comply with subsection (a), a tenant may recover all of the security deposit due the tenant and reasonable attorney's fees.
(c) This section does not preclude the landlord or tenant from recovering other damages to which either is entitled.
(d) The owner of the dwelling unit at the time of the termination of the rental agreement is bound by this section.

The overarching purpose of the entire security deposit statute is to protect and benefit tenants. *Robinson v. Gazvoda*, 783 N.E.2d 1245, 1251 (Ind. Ct. App. 2003), *trans. denied*. Many provisions of the statute deal with penalties for landlords who do not comply with the notice requirement. *Id*. We must therefore construe any ambiguous provisions with the overarching purpose of the statute in mind. *Id*.

It is the termination of the lease agreement that triggers the forty-five day notice provision. *Eppl v. DiGiacomo*, 946 N.E.2d 646, 650 (Ind. Ct. App. 2011). Termination of a lease agreement occurs when the tenant surrenders the tenancy and the landlord accepts the tenant's surrender. *Id*. at 650-51. Surrender may be express or by operation of law. *Id.* at 651. Surrender arises by operation of law when the parties to a lease take an action that is so inconsistent with the landlord-tenant relationship as to imply they have both agreed to deem the surrender to have taken effect. *Id.* Surrender and acceptance will be determined on a case by case basis by examining the acts of the parties in each case. *Rueth v. Quinn*, 659 N.E.2d 684, 688-89 (Ind. Ct. App. 1996), *trans. denied*. Failure by the landlord to comply with the notice of damages requirement within the forty-five days after the termination of occupancy constitutes agreement by the landlord that no damages are due, and the landlord must remit to the tenant immediately the full security deposit. *Figg v. Bryan Rental Inc.*, 646 N.E.2d 69, 72 (Ind. Ct. App. 1995), *reh'g denied, trans. denied*.

5

Zanovello argues he terminated his occupancy by May 6,[5] when he provided Deer Park with a forwarding address. Zanovello testified he was buying a house, so he contacted Deer Park "and said that if they had any other potential tenants that were interested in the apartment . . . we were going to vacate it anyway when we moved to the new house which would be the end of April." (Tr. at 53.) In an e-mail dated May 6, Zanovello referred to a prior phone call where he told Deer Park he would "return all the keys and leave the apartment for good, while still being responsible for the lease until its termination." (Appellee's App. at 8.) In reply, the Deer Park representative noted "the apartment was shown almost daily due to your request to have someone re-rent it early to allow your lease to term." (*Id*. at 7.)

From that evidence the trial court could have reasonably inferred, as Zanovello argued before it, Deer Park was "well aware that occupancy had ended prior to May 6th on which date Mr. Zanovello informed her in writing that he was living elsewhere and provided a forwarding address."[6] (Tr. at 56.) We therefore cannot say "the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion." *See Romanowski*, 896 N.E.2d at 562. As the

---

[5] As noted above, Zanovello's "Notice to Vacate" where he provided a forwarding address was dated May 13. He also offered into evidence a May 6 e-mail exchange with the Deer Park representative, which was admitted without objection.

[6] As noted above, the "writing" to which Zanovello refers is presumably the May 6 e-mail exchange. The "forwarding address" is presumably the address Zanovello indicated in his e-mail signature, which was not the address of his Deer Park apartment.

trial court could have inferred Zanovello's surrender arose by operation of law because the parties took actions "so inconsistent with the subsisting landlord-tenant relationship as to imply they have both agreed to deem the surrender to have taken effect," *see Eppl*, 946 N.E.2d at 650, Deer Park's itemized list of damages was not provided to Zanovello within forty-five days and we therefore affirm the trial court.

Affirmed.

RILEY, J., concurs.

DARDEN, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

DEER PARK MANAGEMENT,         )
                                          )

     Appellant,                   )
                                          )

       vs.                     )      No.  53A01-1104-SC-161
                                          )

GIOVANNI ZANOVELLO,         )
                                          )

     Appellee.                  )

**DARDEN, Judge, dissenting**

I respectfully dissent.  In *Figg v. Bryan Rental Inc.*, 646 N.E.2d 69 (Ind. Ct. App. 1995), *trans. denied,* we concluded that "where a tenant vacates the premises and the lease agreement terminates at a later date, the 45-day period does not commence until the date that the lease terminates." *Id.* at 73.  Citing *Mileusnich v. Novogroder Co.*, 643 N.E.2d 937, 939 (Ind. Ct. App. 1994), we noted that "termination is the key under the Security Deposits Statute, [and] our first inquiry must be whether *the lease* actually *terminated* and if so, when." *Id. (*emphasis in original).  We also noted that a surrender of tenancy is a "yielding

8

of the tenancy to the owner of the reversion or remainder, wherein the tenancy is submerged or extinguished by the agreement . . . There must be some decisive, unequivocal act by the landlord which manifests the lessor's acceptance o[f] the surrender." *Id.* (quoting *Mileusnich*, 643 N.E.2d at 939).

Here, Zanovello's May 6 communication stated his displeasure with Deer Park's failure to schedule the final inspection on a day convenient for Zanovello. In the same communication, he agreed to be "responsible for the lease until its termination." (Appellee's App. 8). This communication was not, by its terms, the termination of the lease. Indeed, it was an acknowledgment that the lease had not terminated when Zanovello moved out of the apartment. Furthermore, Deer Park's response was not a decisive, unequivocal act manifesting Deer Park's acceptance of a surrender of the lease. Instead, the response, which states that "the apartment was shown almost daily due to your request to have someone re-rent it early *to allow your lease to term[inate],*" is clearly an attempt to mitigate Zanovello's damages, not an acceptance or surrender of the lease.

Zanovello's lease terminated on June 24, 2010, and the July 27, 2010 45-day "move out" letter was timely. I would reverse the small claims court's judgment on this issue.

9