# FOR PUBLICATION

ATTORNEYS FOR APPELLANT;

**STEVEN P. LAMMERS**
**ROBERT A. ANDERSON**
Krieg Devault LLP
Schererville, Indiana

**LIBBY Y. GOODKNIGHT**
Krieg Devault LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**GLENN W. KUCHEL**
Green and Kuchel, P.C.
Schererville, Indiana

**FILED**

May 29 2012, 9:42 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SISTERS OF ST. FRANCIS HEALTH SERVICES, INC., | ) ) ) | |
| Appellant-Defendant, | ) ) | |
| vs. | ) ) | No. 45A05-1110-PL-587 |
| EON PROPERTIES, LLC, | ) ) | |
| Appellee-Plaintiff. | ) ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Gerald N. Svetanoff, Judge
Cause No. 45D04-1006-PL-53

**May 29, 2012**

**OPINON – FOR PUBLICATION**

**BAKER, Judge**

Here, a company that owns commercial property entered into a lease agreement and a series of amendments with a hospital. The amendments reduced the hospital's space, thereby allowing a new tenant to lease that space under a separate lease and reducing the hospital's rent obligation. However, one amendment provided that if the new tenant exercised its option to vacate after thirty-six months, then the hospital would be responsible for the new tenant's rent for the last two years of the new tenant's five-year lease. The new tenant exercised its option to vacate, thus triggering the hospital's responsibility to pay the last two years of rent. The hospital disputes this, claiming that the new tenant failed to occupy the premises long enough or to properly exercise its option to vacate. We conclude that the plain intent of the parties was to allocate the risk that if the new tenant would vacate the premises early, then the property owner assumed the risk for the first three years of the five-year lease and the hospital assumed the risk for the last two years.

Appellant-defendant Sisters of St. Francis Health Services, Inc. (the "Hospital") appeals the trial court's order granting summary judgment in favor of appellee-plaintiff EON Properties, LLC, (EON), and denying its cross-motion for partial summary judgment. More particularly, the Hospital argues that the trial court failed to give effect to the clear and unambiguous terms of its lease agreements with EON. Additionally, the Hospital contends that the trial court erred when it awarded EON $182,014.62 in damages when there are genuine issues of material fact regarding EON's alleged damages. Concluding that the trial court did not err when it granted summary judgment

2

in favor of EON regarding the Hospital's liability under the lease agreements, but that there are genuine issues of material fact regarding EON's alleged damages, we affirm in part, reverse in part, and remand to the trial court for the continuation of the underlying litigation regarding damages.

<u>FACTS</u>[1]

<u>The Lease Agreement</u>

EON owns and provides property management services for the office suite building known as the Plum Creek Center in Schererville. On July 10, 2000, EON and the Hospital entered into a ten-year Office Lease Agreement (the Lease) for approximately 9,277 square feet of medical office space (the Leased Premises) for ten years, with the term of the Lease commencing on February 1, 2001, and ending in February 2011.

Under the terms of the Lease, the minimum rent for the first year was $125,240 plus monthly common area maintenance fees, pro rata real estate taxes, and other specified charges. Thereafter, the annual rent was to be increased according to Section 2.01(a)(2) of the Lease as follows:

> Annual rent for each subsequent year of the original term of this Lease shall be increased by the lesser of a) three percent (3%) of the annual rent due and payable for the prior lease year, or b) the annual rent due and payable for each prior lease year, multiplied by a percentage equal to the percentage increase in the Consumer Price Index for . . . Chicago, Gary, [and] Lake [Counties] . . . published by the Bureau of Labor Statistics of the United States Department of Labor.

---

[1] We heard oral argument on April 25, 2012, in Indianapolis. We thank counsel for their able presentations.

Appellant's App. p. 254.

## The Amendments to the Lease

On May 19, 2004, EON and the Hospital entered into a lease amendment (the First Amendment). The First Amendment provided that the Leased Premises would be reduced by approximately 625 square feet so that EON could construct a hallway, at the Hospital's expense, for the purpose of marketing unused portions of the Leased Premises to prospective tenants.

On August 11, 2004, EON and the Hospital entered into a second lease amendment (the Second Amendment). Under the Second Amendment, the Hospital's leased space was reduced to 5,430 square feet to release an unused portion of the Leased Premises so that EON could enter into a lease with a new tenant. The Hospital agreed to pay EON monthly installments of $5,443 for forty-four months, in consideration of EON agreeing to reduce the square footage of the Leased Premises.

On August 18, 2004, EON entered into a lease with Nykiel-Carlin (the Nykiel-Carlin Lease) for the released portion of the Leased Premises that was the subject of the Second Amendment. The term of the Nykiel-Carlin Lease was for six years and nine months, with an annual rent of $103,000.

On March 14, 2005, EON and the Hospital entered into a third lease amendment (the Third Amendment). Under the Third Amendment, the Hospital agreed to release an additional unused portion of the Leased Premises so that EON could enter into another

4

lease with a new tenant. Additionally, the Hospital's rent was reduced; however, the Hospital was required to make thirty-six monthly payments of $5,740 to EON in consideration for EON agreeing to release the additional unused portion of the Leased Premises. Furthermore, Section 7 of the Third Amendment stated:

> Should the subsequent tenant for the Additional Released Premises exercise its option to vacate after the initial 36 months of occupancy, [the Hospital ] shall pay the rent and additional rent, which would be due and payable under the terms of the Lease for the Additional Released Premises with the subsequent tenant, for the balance of the Tenant's initial five (5) year term of the Lease.

Appellant's App. p. 179.

## Ameriquest Lease

On February 23, 2005, EON entered into a lease with Ameriquest[2] (the Ameriquest Lease) for the released portion of the Leased Premises (Additional Released Premises) that was the subject of the Third Amendment. The term of the Ameriquest Lease was for five years commencing on June 1, 2005, with an annual rent of $57,814.15.

Before entering into the Ameriquest Lease, Ameriquest demanded an option that would allow it to vacate the Additional Released Premises and end its rent obligations after thirty-six months. These terms were less favorable to EON because under the Lease, the Hospital was obligated to pay rent on the Additional Released Premises for six more years, and the Hospital did not have an option to vacate. EON advised the Hospital that it would agree to lease the space to Ameriquest if the Hospital would agree to pay the

---

[2] The Hospital had suggested Ameriquest as a tenant.

remainder of the lease after the first thirty-six months if Ameriquest stopped paying rent under the option to vacate.

On or about March 24, 2005, during the time when EON and the Hospital were executing the Third Amendment, EON and Ameriquest entered into an Addendum to the Ameriquest Lease. Section 5(a) of the Addendum (Section 5(a)) granted Ameriquest several tenant options, including an option to vacate the Additional Released Premises and terminate the Ameriquest Lease as follows:

> Option to Terminate. [Ameriquest] shall have the right to terminate this [Ameriquest Lease] at anytime after the end of the thirty-sixth (36th) month of the term of this [Ameriquest Lease] ("Termination Date"), upon ninety (90) days written notice to [EON] ("Termination Option"). If [Ameriquest] exercises its Termination Option, [Ameriquest] shall reimburse [EON] an amount equal to the actual cost of the unamortized (i) [Ameriquest] Improvements (minus any [EON] construction or supervision fees), and (ii) the brokers' commissions, amortized over a five (5) year period, and to the extent [EON] provides [Ameriquest] with substantiated documentation of such costs ("Termination Penalty"). [Ameriquest] shall pay [EON] the Termination Penalty as of the Termination Date.

Appellant's App. p. 204.

Pursuant to Section 1 of the Addendum, the commencement date was modified to be the later of June 1, 2005, or the date EON substantially completed tenant improvements for the premises Ameriquest was leasing. On March 30, 2005, EON sent an email to Ameriquest indicating that the premises of the Ameriquest Lease would be available on June 1, 2005. On May 12, 2005, EON sent another email to Ameriquest reiterating, "[a]s we discussed, the [Ameriquest Lease] will start on June 1st." Appellant's App. p. 212.

6

## Termination of the Ameriquest Lease

By May 2006, less than one year after the Ameriquest Lease had commenced, Ameriquest began experiencing financial problems. On May 2, 2006, ACC Capital Holdings, the holding company for Ameriquest, faxed a letter to EON indicating that as of that date, Ameriquest would be closed. On June 29, 2006, Ameriquest faxed another letter to EON reiterating that, "[a]s you are aware," Ameriquest had closed its offices at the Plum Creek Center. Appellant's App. p. 215.

On November 7, 2007, EON and Ameriquest entered into a Lease Termination Agreement in which EON fully released Ameriquest from "any and all claims, demands, debts, liabilities, actions, lawsuits, causes of action, damages, compensation, obligations, attorneys' fees, costs or expenses of any kind, nature, character or description whatsoever, whether known or unknown, past, present or future, existing or suspected to exist arising in connection with the [Ameriquest] Lease." Id. at 216. In exchange, EON received some of Ameriquest's office furniture and a one-time payment of $75,000. The Lease Termination Agreement did not reference the option to terminate in Section 5(a) nor did it mention that Ameriquest was exercising its option to terminate subject to its notice requirements and penalties.

## EON Seeks Rent from the Hospital

7

Subsequently, EON turned to the Hospital to satisfy the final two years of rent on the Ameriquest Lease pursuant to the Third Amendment. The Hospital's position was that it was not responsible for Ameriquest's lease payments.

On March 12, 2008, EON sent the Hospital a letter indicating that the annual rent payment under the Lease, beginning with the February 2008 rent payment, would be increased by 4.05%. This increase represented the increase in the applicable Consumer Price Index, which was greater than the 3% increase expressly contemplated in Section 2.01(a)(2) of the Lease. In addition, EON does not dispute that it accepted fifty-one monthly payments of $5,443 from the Hospital rather than the forty-four monthly payments required under the terms of the Second Amendment. EON did not return the seven extra installments, which totaled $38,001.

## Procedural History

On November 19, 2009, EON filed a complaint against the Hospital alleging breach of the Lease and quantum meruit. Specifically, EON alleged that the Hospital owed under the Third Amendment because the subsequent tenant (Ameriquest) had exercised its option to vacate.

On January 13, 2010, the Hospital answered and filed a counterclaim against EON for breach of the Lease and quantum meruit arising out of EON's increase of rent payments and its acceptance of overpayments from the Hospital. Another counterclaim against EON for conversion and punitive damages was dismissed with prejudice on December 28, 2010.

On April 1, 2011, EON filed a motion for summary judgment on its complaint and on the Hospital's counterclaim. That same day, the Hospital filed a motion for partial summary judgment on EON's complaint, asserting that it was not liable to EON for the final two years of Ameriquest's lease payments. The trial court heard oral argument on the motions and issued its summary judgment order on September 19, 2011.

In its September 19 order, the trial court concluded that:

> The terms of the Third Lease Amendment are clear and unambiguous and reflect an attempt by EON to protect itself from the possibility that Ameriquest might not be able fulfill its obligations under its lease with EON in the last two (2) years of that lease. This Court finds that the Third Lease Agreement did provide EON that protection. This Court further finds pivotal the fact that EON is _not_ attempting to enforce its right against [the Hospital] for any period of time other than that which is after the initial thirty-six (36) month period that Ameriquest was leasing its space.

Appellant's App. p. 14 (emphasis in original).

Accordingly, the trial court granted EON's motion for summary judgment and denied the Hospital's motion for partial summary judgment. The trial court ordered EON to file, within fourteen days, an updated itemization of amounts claimed to be due and owing from the Hospital and evidence of attorney fees and costs that EON had incurred through the summary judgment proceedings.

On September 30, 2011, EON filed an updated itemization of rent, charges, and attorney fees, claiming that the Hospital owed EON a total of $182,014.60. On October 4, 2011, the Hospital filed a motion to suspend entry of judgment, objection to updated itemization, and a motion to set remaining matters for jury trial or, in the alternative, a

motion to certify the September 19 order for interlocutory appeal. The Hospital argued that there were genuine issues of material fact on the amount of damages.

On October 11, 2011, the trial court entered judgment in EON's favor for $182,014.60 plus post-judgment interest. The trial court denied the Hospital's remaining motions as moot in light of its order entering judgment for the payment of money against the Hospital, noting that "under Appellate Rule 14A(1), [the Hospital] may take its interlocutory appeal [from the trial court's money judgment] as a matter of right without certification by this Court." Appellant's App. p. 630. Additionally, the trial court determined that the Hospital's objection to the updated itemization and motion to set the remaining matters for trial were moot "since the contemporaneous order of this date provides that any ancillary issues can be addressed in subsequent proceedings" and "makes provision for such a determination." Id. at 629. The Hospital now appeals.

DISCUSSION AND DECISION

I. Liablity Under the Lease

A. Standard of Review

Our review of a motion for summary judgment is the same as the trial court; namely, summary judgment is appropriate only where the evidence shows that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Wagner v. Yates, 912 N.E.2d 805, 808 (Ind. 2009); see also Ind. Trial Rule 56(C). Nevertheless, the trial court's grant of summary judgment "enters appellate review clothed with a presumption of validity," and the appellant bears the burden of

10

demonstrating that the trial court erred. Cnty. Council v. Northwest Ind. Reg'l. Dev. Auth., 944 N.E.2d 519, 523-24 (Ind. Ct. App. 2011), trans. denied. We must construe all factual inferences in favor of the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party. Scribner v. Gibbs, 953 N.E.2d 475, 479 (Ind. Ct. App. 2011). The fact that the parties filed cross-motions for summary judgment does not alter the standard of review on appeal. Deckler v. Zengler, 883 N.E.2d 839, 842 (Ind. Ct. App. 2008).

A court will construe a lease in the same manner as any other contract. Stout v. Kokomo Manor Apartments, 677 N.E.2d 1060, 1064 (Ind. Ct. App. 1997). Construction of written contracts is generally a question of law for which summary judgment is particularly appropriate. Noble Roman's Inc. v. Ward, 760 N.E.2d 1132, 1137 (Ind. Ct. App. 2002). When interpreting a contract, we will read it as a whole to ascertain its intended meaning. Stout, 677 N.E.2d at 1064. When the terms of a contract are clear and unambiguous, those terms are conclusive, and the court will not construe the contract or look at extrinsic evidence, but rather, will apply the contract provisions. Id.

Notwithstanding the above, if reasonable people would find the contract susceptible to more than one construction, an ambiguity exists, and the trier of fact must ascertain the extrinsic facts necessary to interpret the contract. Farmers Elevator Co. of Oakville, Inc. v. Hamilton, 926 N.E.2d 68, 80 (Ind. Ct. App. 2010), trans. denied. Conversely, if the ambiguity exists merely by the language used, construction of the ambiguous contract is a question of law for the court. Id.

11

## B. Failure to Apply Clear and Unambiguous Language

The Hospital argues that the trial court erred by failing to apply the clear and unambiguous language of the Third Amendment. More particularly, the Hospital asserts that before it could be held liable under the Third Amendment, two conditions had to be satisfied: Ameriquest had to occupy the Additional Released Premises for thirty-six months, and it had to properly exercise its option to vacate under Section 5(a) by satisfying applicable notice provisions. As stated above, Section 7 of the Third Amendment provided in part:

> Should the subsequent tenant for the Additional Released Premises exercise its <u>option to vacate after the initial 36 months of occupancy</u>, [the Hospital ] shall pay the rent and additional rent, which would be due and payable under the terms of the Lease for the Additional Released Premises with the subsequent tenant, for the balance of the Tenant's initial five (5) year term of the Lease.

Appellant's App. p. 179 (emphasis added).

The Hospital points out that Ameriquest failed to occupy the Additional Released Premises for thirty-six months. To be sure, after only twenty-nine months, EON and Ameriquest terminated the Ameriquest Lease through the Lease Termination Agreement, under which EON repossessed the Additional Leased Premises and collected $75,000 from Ameriquest. The Hospital alleges that the Lease Termination Agreement was a

12

settlement agreement for a breached lease between EON and Ameriquest rather than an option to vacate as contemplated by the Third Amendment.

As further evidence that Ameriquest did not properly exercise its option to vacate as contemplated by the Third Amendment, the Hospital points out that Ameriquest failed to satisfy the notice requirements necessary to invoke its option to terminate under Section 5(a). As stated above, Ameriquest's option to terminate provided in relevant part:

> Option to Terminate. [Ameriquest] shall have the right to terminate this [Ameriquest] Lease at anytime after the end of the thirty-sixth (36th) month of the term of this [Ameriquest] Lease ("Termination Date"), upon ninety (90) days written notice to [EON] ("Termination Option").

Appellant's App. p. 204 (emphasis added).

Here, in interpreting the Third Amendment, we will look to the Lease as a whole to ascertain the parties' intent. See Noble Roman's, Inc. v. Pizza Boxes, Inc., 835 N.E.2d 1094, 1098 (Ind. Ct. App. 2005) (stating that "[p]articular words and phrases cannot be read alone, and the parties' intentions must be determined by reading the contract as a whole"). Just before the Third Amendment was executed, the Hospital had six years remaining on the Lease with no option to vacate, which were very favorable terms to EON. The Third Amendment provided that the Hospital would give up additional space so that EON could enter into a separate lease with a new tenant, which would benefit the Hospital by reducing its rent obligation.

13

Notwithstanding this benefit, the Hospital was aware that the terms of the lease with the new tenant, or the Ameriquest Lease, were less favorable to EON, inasmuch as Ameriquest wanted an option to terminate after thirty-six months. Consequently, Section 7 of the Third Amendment was added, making it the Hospital's duty to pay the rent on the Additional Released Premises if Ameriquest exercised that option. Put another way, the plain intent of the parties in executing the Third Amendment was to allocate risk between EON and the Hospital, with EON bearing the risk for the first three years of the Ameriquest Lease and the Hospital bearing the risk for the last two years of the five-year Ameriquest Lease.

As for Section 5(a), we note at the outset that the option to terminate contained therein was part of the Addendum to the Ameriquest Lease between EON and Ameriquest; the Hospital was not a party to that agreement and, therefore, cannot seek to enforce it. See OEC-Diasonics, Inc. v. Major, 674 N.E.2d 1312, 1314-15 (Ind. 1996) (recognizing that "[g]enerally, only parties to a contract or those in privity with the parties have rights under the contract"). To be sure, the Ameriquest Lease was not a sublease of the Lease with the Hospital, but rather, a separate, independent lease.

Because EON allowed Ameriquest to terminate the Ameriquest Lease outside the provisions of Section 5(a), EON had to absorb its share of the loss for the first thirty-six months that Ameriquest did not pay rent. That said, EON sought to offset some of its loss through the Lease Termination Agreement with Ameriquest, and did not seek

14

payment from the Hospital for any loss of rent that it incurred during the first thirty-six months of the Ameriquest Lease.

As for the notice provisions in Section 5(a), those were also for the benefit of EON. Consequently, the fact that EON did not insist upon strict adherence to the notice requirements before allowing Ameriquest to terminate the Ameriquest Lease pursuant to the Lease Terminate Agreement does not relieve the Hospital of its obligations under the Third Amendment, and the trial court did not err by granting summary judgment in favor of EON on the issue of the Hospital's liability under the Third Amendment.

## II. Damages

The Hospital argues that the trial court erred by entering summary judgment for $182,014.60 plus statutory interest when there are genuine issues of material fact as to the damages recoverable by EON. More particularly, the Hospital contends that there are genuine issues of material fact in light of the $75,000 that EON received from Ameriquest under the Lease Termination Agreement, the $5,000 security deposit that the Hospital paid but was not credited as required under the Lease, overpayments the Hospital made but not credited under the Second Amendment, and an improperly-inflated rent increase beginning in February 2008.

In a breach of contract action, the measure of damages is the loss actually suffered by the breach. Sheppard v. Stanich, 749 N.E.2d 609, 611 (Ind. Ct. App. 2001). That said, the nonbreaching party is not entitled to be placed in a better position than he would have been if the contract had not been broken. Id.

15

As for the $75,000 that EON received from Ameriquest, EON's complaint against the Hospital was a direct action to enforce the Lease with the Hospital rather than an attempt to enforce the Ameriquest Lease. As stated above, the Ameriquest Lease was not a sublease of the Lease but was an independent lease. Therefore, any resolution of the breach of the Ameriquest Lease has no bearing on the Hospital's obligations under a separate and unrelated lease.

Regarding the $5,000 security deposit that the Hospital paid under the Lease and applicable Amendments, Section 2.04 of the Lease states that "[t]he deposit shall be returned to [the Hospital] by [EON] upon the termination of the Lease, after deducting therefrom any sums owed to [EON] pursuant to provisions of this Lease." Appellant's App. p. 126. However, it appears from the record and from oral argument that the Hospital was never credited $5,000. Appellant's App. p. 322-23; 611-23. Eon contends that because the Hospital stopped paying rent and other obligations under the Lease, that credit is now gone. Nevertheless, there is a genuine issue of material fact on this issue.

Moving forward to the Hospital's claim that EON's updated itemization failed to credit it for $38,001 in overpayments, the Second Amendment provided that the Hospital was required to make forty-four payments of $5,443. Appellant's App. p. 150-51. However, the Hospital claims that it made, and EON accepted, fifty-one payments of $5,443.

In support of this contention, the Hospital submitted the affidavit of Kendra Schuett, the financial analyst for the Hospital, who attested that she had personal

knowledge of the payments made by the Hospital to EON under the Lease and applicable amendments and that she provided this information to Michael Lunn, who had a brokerage agreement with the Hospital, to assist him with his analysis of the payments made by the Hospital to EON. Appellant's App. p. 438-39. Schuett's affidavit further represented that Lunn's analysis "under the Lease and applicable amendments is accurate and is consistent with the information I provided to Mr. Lunn and the spreadsheet created by me showing all of the payments made . . . to EON." Id. at 439. Lunn then used the information provided by Schuett to prepare a spreadsheet showing that fifty-one payments of $5,443 were made. Id. at 451, 453. We think this is sufficient to create a material issue of fact, thereby precluding summary judgment on this issue. See Schrum v. Moskaluk, 655 N.E.2d 561, 564 (Ind. Ct. App. 1995) (recognizing that where material facts conflict or conflicting inferences arise, summary judgment should not be entered so as to avoid "overkill in its use").

Next, the Hospital maintains that EON increased the rent by the wrong percentage rate beginning with the February 2008 rent payment. More particularly, as stated above, on March 12, 2008, EON informed the Hospital of a rent increase of 4.05%, which represented the Consumer Price Index. However, the Lease states that the annual rent shall be the lesser of 3% of "the annual rent due and payable for the prior lease year, or . . . the annual rent due and payable for each prior lease year, multiplied by a percentage equal to the percentage increase in the Consumer Price Index. . . ." Appellant's App. p. 254.

Here, EON does not dispute that it improperly increased the rent. Therefore, this issue also precludes summary judgment regarding the damages that EON is entitled to recover.

## CONCLUSION

The trial court did not err in granting summary judgment in favor of EON on the issue of the Hospital's liability under the Third Amendment. However, the trial court did err by granting summary in favor of EON with respect to the amount of damages owed by the Hospital. Specifically, there are genuine issues of material fact regarding whether the Hospital should receive credits for the $5,000 security deposit, its claimed overpayments under the Second Amendment, and the improperly increased rent that EON does not dispute. However, the Hospital is not entitled to a credit for the $75,000 that EON received under the Lease Termination Agreement with Ameriquest, inasmuch as it was a separate agreement involving a separate lease.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to continue the underlying litigation on the issue of damages consistent with this opinion.

RILEY, J., and BAILEY, J., concur.

18